UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John Frederick Dryer, James Lawrence Marshall, Joseph Michael Senser, Elvin Lamont Bethea, Dante Anthony Pastorini, and Edward Alvin White, on behalf of themselves and all others similarly situated, | Civil No. 09-2182 (PAM/SRN) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| National Football League, | |
| Defendant. | |

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings. For the reasons that follow, the Motion is denied.

**BACKGROUND**

Plaintiffs in this putative class action are former professional football players. They contend that Defendant National Football League ("NFL") is violating their common-law and statutory rights of publicity by using video footage from games in which they played as part of the NFL Films' promotional videos, such as the "History" series, which includes videos called "The Fabulous Fifties" and "Sensational 60s." There is no dispute that these videos are used to promote the NFL. (See, e.g., Def.'s Supp. Mem. at 12 (describing NFL Films as "promot[ing] interest in a professional sport").) In the course of that promotion, the NFL

uses both the Plaintiffs' names and images of Plaintiffs from their playing days.

Plaintiffs raise three different types of claims in their Amended Complaint. First, Plaintiffs contend that the NFL's use of Plaintiffs' names and images constitutes false endorsement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125. (Am. Compl. Count 1.) Next, Plaintiffs raise the right of publicity under the common law and/or statutes of Minnesota, California, Texas, Arizona, and the remainder of the 50 states. (Id. Counts 2 - 7.) Finally, Plaintiffs contend that the NFL has been unjustly enriched by its use of Plaintiffs' names and images to promote the NFL. (Id. Count 7.[1])

The NFL argues that the First Amendment precludes the relief Plaintiffs seek. The NFL also argues that Plaintiffs' claims are preempted by the Copyright Act, and that Plaintiffs have failed to make out a Lanham Act claim for false endorsement. The NFL asks for judgment on the pleadings under Fed. R. Civ. P. 12(c).[2]

**DISCUSSION**

In considering a motion for judgment on the pleadings, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002). "Judgment on the pleadings should be granted only if the moving party

---

[1]  There are two Count 7s in the Amended Complaint.

[2]  The NFL also argues in a footnote that the correct Defendant is not the NFL itself but rather NFL Productions LLC, doing business as NFL Films. The proper place for this argument is a motion to substitute party, not a footnote in a memorandum supporting a different motion.

clearly establishes that there are no material issue of fact and that it is entitled to judgment as a matter of law." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

## A.    Right of Publicity

The NFL contends that Plaintiffs' right-of-publicity claims are precluded by the First Amendment. There is no dispute that the films at issue are speech due some protection under the First Amendment. The threshold inquiry is whether the films are, as the NFL argues, expressive works entitled to the highest protection under the First Amendment, or commercial speech entitled to less protection, as Plaintiffs contend. For the purposes of this Motion, if the films are deemed to be commercial speech, Plaintiffs' right-of-publicity claim survives the NFL's First Amendment challenge.

The Supreme Court extended First Amendment protection to commercial speech in 1975. Bigelow v. Virginia, 421 U.S. 809 (1975). The Court did not define commercial speech in Bigelow, however, and in the decades since has studiously avoided any precise definition of the term. See City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 420-23 (1993) (discussing evolving definitions of commercial speech in Supreme Court precedent).

The NFL posits that the definition of commercial speech is simple: commercial speech is speech that "does no more than propose a commercial transaction." (Def.'s Reply Mem. at 10 (quoting Porous Media Corp. v. Pall Corp., 173 F.3d 1109, 1120 (8th Cir. 1999) (quoting Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 66 (1983)).) This definition, as the Court of Appeals recognized, is "narrow." Id. 1120 n.8. In fact, the Porous Media court

criticized the defendant's reliance on that narrow definition.  Id.  "Communications can constitute commercial speech notwithstanding the fact that they contain discussions of important public issues."  Id. (quoting Bd. of Trustees of the State Univ. of New York v. Fox, 492 U.S. 469, 475 (1989)).  The Supreme Court has also noted "a somewhat larger category of commercial speech–'that is, expression related solely to the economic interests of the speaker and its audience.'"  City of Cincinnati, 507 U.S. at 422 (quoting Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 561 (1980)).  Given the elastic definition of commercial speech, the Court will not restrict itself to determining only whether the speech at issue here "does no more than propose a commercial transaction."

  1.   What is Commercial Speech?

  The most widely cited "test" for what constitutes commercial speech arose from the Supreme Court decision of Bolger v. Youngs Drug Products Corporation.  463 U.S. at 66 . The Court in Bolger, however, specifically noted that the common indicia of commercial speech were not necessarily determinative of whether speech was in fact commercial:  the "mere fact" that the speech is an advertisement "clearly does not compel the conclusion that [it is] commercial speech;" the "reference to a specific product does not by itself render [it] commercial speech;" and the presence of "economic motivation" is "insufficient by itself to turn the [speech] into commercial speech."  Id.  The Court went on to find that the "combination of all these characteristics, however, provides strong support" for the conclusion that the speech is commercial.  Id. (emphasis in original).  The Court cautioned that it did not "mean to suggest that each of the characteristics . . . must necessarily be

present in order for speech to be commercial." Id. at 67 n.14.  More forcefully, the Court warned that it "express[ed] no opinion as to whether reference to any particular product or service is a necessary element of commercial speech." Id.

Despite these warnings, a three-part test was born.  See, e.g., Porous Media Corp. v. Pall Corp., 173 F.3d 1109, 1120 (8th Cir. 1999) (setting forth three factors that govern whether speech is commercial: if it is an advertisement, if it refers to a specific product or service, and the economic motivation of the speaker).  As both parties undoubtedly realize, however, there are more holes in this "test" than in a wheel of good Swiss cheese.  The Eighth Circuit itself stressed that "commercial speech need not originate solely from economic motives." Id. at 1121.  The Supreme Court has commented on "the difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category." City of Cincinnati, 507 U.S. at 419.

Not all courts engage in the three-part commercial speech analysis in determining whether the First Amendment bars claims such as those Plaintiffs bring here.  The cases on which the NFL most heavily relies, Gionfriddo v. Major League Baseball, 94 Cal. App. 4th 400 (Cal. Dist. Ct. App. 2001), C.B.C. Distrib. & Mktg., Inc. v. Major League Baseball Advanced Media, L.P., 505 F.3d 818 (8th Cir. 2007), and CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc., 259 F.R.D. 398 (D. Minn. 2009) (Montgomery, J.), contain no mention of Porous Media or any iteration of the Porous Media test.  Rather, these courts merely examined the challenged uses and determined that the uses were protected by the First Amendment.  The Gionfriddo case is the only case that is directly analogous to this

5

case. For the following reasons, however, the Court does not find the <u>Gionfriddo</u> decision persuasive, at least as it relates to the type of uses at issue here.

In <u>Gionfriddo</u>, former Major League Baseball players brought a California statutory right-of-publicity claim challenging Major League Baseball's use of their photographs, names, and video clips from games in which they played. <u>Gionfriddo</u>, 94 Cal. App. 4th at 406. The players argued that the profit-centered nature of the use of player information and images required the conclusion that the use was commercial speech. <u>Id.</u> at 411. The court disagreed, stating that "[An expressive activity] does not lose its constitutional protection because it is undertaken for profit." <u>Id.</u> (quoting, inter alia, <u>Comedy III Prods., Inc. v. Gary Saderup, Inc.</u>, 21 P.3d 797, 802 (Cal. 2001)). This statement is undeniably true. It is also true, however, that not all information that "command[s] a substantial public interest" is "due substantial constitutional protection." <u>Id.</u> The Eighth Circuit has warned that "[c]ommunications can constitute commercial speech notwithstanding the fact that they contain discussions of important public issues." <u>Porous Media Corp.</u>, 173 F.3d at 1120 n.8. Thus, the Court disagrees with the conclusion of the <u>Gionfriddo</u> court because a court may not merely examine in isolation the public interest or the commercial nature of the works at issue. Rather, the Court must examine all aspects of the works to determine whether those works constitute commercial speech. The <u>Gionfriddo</u> court's heavy emphasis on the public's interest in the works at issue calls into doubt the far-reaching holding of that opinion.

The Eighth Circuit cited <u>Gionfriddo</u> in determining that current professional athletes could not bring raise a right-to-publicity claim for the use of their "names, nicknames,

6

likenesses, signatures, pictures, playing records, and/or biographical data" in an online fantasy baseball game. C.B.C., 505 F.3d at 821. The court found that although the use of players' information violated the players' right of publicity under Missouri law, the First Amendment trumped the state-law cause of action. Id. at 823.

In calling the Gionfriddo decision "persuasive," the Eighth Circuit panel quoted that court's determination that the "recitation and discussion of factual data concerning the athletic performance of [players on Major League Baseball's website] command a substantial public interest, and, therefore, is a form of expression due substantial constitutional protection." Id. at 823-24 (quoting Gionfriddo, 114 Cal. Rptr. 2d at 411). The NFL maintains that this passage from C.B.C. means that the Eighth Circuit agreed with Gionfriddo as to all the uses found permissible in Gionfriddo, including video clips of former players playing baseball. The C.B.C. court did not explicitly adopt Gionfriddo's broad holding, however, and indeed the passage quoted above limits the "persuasive" value of Gionfriddo to "the recitation and discussion of factual data." A full reading of C.B.C. shows that the key to the Eighth Circuit's decision was that the information at issue was already in the public domain. See id. at 823 ("First, the information used . . . is all readily available in the public domain, and it would be a strange law that a person would not have a first amendment right to use information that is available to everyone.")

The decision in CBS Interactive also does not compel the conclusion that the First Amendment precludes Plaintiffs challenge. In that decision, another Judge in this District determined that current NFL players' rights of publicity must likewise bow to the First

Amendment. CBS Interactive, 259 F.R.D. at 398. Like C.B.C., the CBS Interactive case involved the use of current players' names, images, and statistics for the purposes of online fantasy football games. Relying on C.B.C., the court granted CBS Interactive's motion to dismiss, finding that any right of publicity in the information was precluded by the First Amendment. The NFL attempts to ascribe meaning to the fact that CBS Interactive rejected the plaintiffs' attempt to limit C.B.C. to players' names and statistics. Although the court did refuse to limit C.B.C as the plaintiffs requested, it did not extend C.B.C to anything other than factual, publicly available data. CBS Interactive, 259 F.R.D. at 417 (finding that the First Amendment protects not only names and statistics, but also "likenesses," "pictures," "and/or biographical data") (quoting C.B.C., 505 F.3d at 823).

Thus, neither C.B.C. nor CBS Interactive is particularly instructive on the issues presented here. The information necessary for fantasy football or fantasy baseball is qualitatively different from the video footage and the use of player names at issue here. First, as the Eighth Circuit noted, the information for fantasy leagues is all publicly available: statistics, names, and even still photographs are widely disseminated in newspapers and magazines. By contrast, the images used in the NFL's video productions are most certainly not publicly available; the NFL protects those images very vigorously. The level of First Amendment protection due the private images is not as strong as that due public information.

Another question that must be resolved is whether this Court can determine whether the speech is commercial at this early stage of the proceedings. A court must examine the "content, form, and context" of the speech "as revealed by the whole record" to determine

whether the speech is commercial speech.  <u>Connick v. Myers</u>, 461 U.S. 138, 147-48 (1983).

This statement from <u>Connick</u> would seem to indicate that whether speech is commercial is

not something that can be resolved on a motion for judgment on the pleadings.  However, the

Supreme Court has also insisted that the ultimate question of whether speech is commercial

is not factual but is a question of law.  <u>Id.</u> at 148 n.7.  Questions of law are often, although

not always, appropriate for resolution on the pleadings.

The NFL urges this Court to make the commercial-speech determination now, and

indeed insists that the Court is obligated to do so.  (<u>See</u> Dec. 16, 2009, Hrg. Tr. at 8

(characterizing determination at this stage as "a constitutional obligation") (argument of

Def.'s counsel).)  Plaintiffs, unsurprisingly, contend that the resolution of this question

requires factual development and that the Court cannot make the determination now.  Neither

party is completely correct.  There are certainly cases in which the commercial-speech

question is resolvable on the face of the pleadings alone.  <u>See, e.g.</u>, <u>CBS Interactive Inc.</u>, 259

F.R.D.  at 420 (finding further discovery unnecessary to the resolution of whether the First

Amendment protects information on fantasy football website).  Similarly, there are cases in

which the question cannot be resolved without a developed record.  <u>See, e.g.</u>, <u>Facenda v.</u>

<u>NFL Films, Inc.</u>, 542 F.3d 1007, 1013 (3d Cir. 2008) (noting that the district court took up

the commercial-speech issue only after discovery was complete).  The only way to determine

whether this case falls into the former or latter category is to examine the factors the Eighth

Circuit has held to be relevant to the commercial-speech inquiry, namely: "(i) whether the

communication is an advertisement, (ii) whether it refers to a specific product or service, and

(iii) whether the speaker has an economic motivation for the speech." Porous Media, 173

F.3d at 1120.

    2.    Application of Three-Part Test

In this case, there is no serious dispute that the NFL has an economic motivation for

the films at issue; thus the Court need only consider the first two Porous Media factors.  The

Court makes these inquiries accepting Plaintiffs' facts as true and granting Plaintiffs all

reasonable inferences, as it must when considering a motion for judgment on the pleadings.

Faibisch, 304 F.3d at 803.

    a.    Advertisement

Plaintiffs  rely primarily on the Third Circuit's opinion in Facenda, 542 F.3d at 1007,

urging the Court to find that the films at issue are advertisements. The NFL argues that the

films are expressive works, not advertisements, relying almost solely on the Gionfriddo

decision, 94 Cal. App. 4th at 400.

Facenda involved a claim by the narrator of NFL films that the use of his voice in a

documentary about the making of a football video game violated his right of publicity and

constituted a violation of the Lanham Act.  The NFL made similar arguments to those made

here, that the documentary was an expressive work and not commercial speech.  The court

examined the work at issue and found that, although "not a traditional 30- or 60-second

television advertisement," it was nonetheless akin to an "infomercial" and was therefore an

advertisement.  Facenda, 542 F.3d at 1017. The Facenda court rejected the NFL's assertion

that the presence of any artistic and informational elements, even if the work at issue is also

promotional, requires that the work be fully protected under the First Amendment:

> Although we err on the side of fully protecting speech when confronted with works near the line dividing commercial and noncommercial speech, we do not view [the film at issue] as close to that boundary. . . .  Moreover, the artistic and informational messages that the NFL contends the program conveys amount to mere praise for the product.

Facenda, 542 F.3d at 1018.

As discussed above, the Gionfriddo court confronted works very similar to that at issue here.  The court found that the works at issue were not commercial speech because they were "fragments from baseball's mosaic."  Id. at 410.  The court waxed poetic about the history of baseball and the public's interest in that history, ultimately finding that

> Baseball is simply making historical facts available to the public through game programs, Web sites and video clips.  The recitation and discussion of factual data concerning the athletic performance of these plaintiffs command substantial public interest, and, therefore, is [sic] a form of expression due substantial constitutional protection.

Id. at 411.

Gionfriddo appears to be the only published decision on the specific issue presented here.  The Gionfriddo holding has not been adopted or applied by any court outside California, although as discussed in more detail above, the Eighth Circuit did quote from the opinion favorably, albeit in a slightly different context.  C.B.C., 505 F.3d at 823-24 (8th Cir. 2007).  Whatever its precedential value, however, the Gionfriddo court did not consider or comment on whether the challenged uses of the players' information and likenesses constituted an advertisement for the purposes of the commercial-speech inquiry.

The films at issue here are not pure infomercials, as was the film at issue in Facenda,

11

542 F.3d at 1007.  Nor are they pure expressive works, as were the parody baseball trading cards at issue in Cardtoons, L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959 (10th Cir. 1996).  The Court has reviewed the films and carefully considered the parties' arguments about those films.  Giving Plaintiffs the benefit of every reasonable inference about the films, it is a plausible inference that the films are advertisements within the meaning of the Porous Media test.  The films are wholly positive depictions of the NFL.  See Facenda, 542 F.3d at 1017 ("Like an infomercial, the program focuses on one product . . . in a positive tone."); id. at 1018 (describing the program as "mere praise for the product").  Although the NFL insists that the films are documentaries, the overwhelmingly positive tone "belies any argument that the program[s have] a documentary purpose." Id. at 1018 (quoting the district court in noting that "no one in [the program] had a negative thing to say about the game").

Plaintiffs have pled that the films are mere advertisements for the NFL, and at this stage of the proceedings, the evidence taken in the light most favorable to Plaintiffs bears out this allegation.  For the purposes of this Motion, Plaintiffs have sufficiently established that the films at issue are advertisements.

> b.     Reference to Specific Product or Service

Plaintiffs allege that the films' entire purpose is to promote the NFL—that is, that the "product" at issue is the NFL's "brand" of football.  The NFL contends that the because the films do not use Plaintiffs' identities to sell another, separate product, they are fully protected.  According to the NFL, "[Plaintiffs' identities] are the product." (Def.'s Reply

Mem. at 11.)[3]  But there is another possible inference from the pleadings and the films: Plaintiffs' identities are not the product, NFL football is the product.  The Court may not choose from competing, reasonable inferences on a motion for judgment on the pleadings. Thus, once again giving Plaintiffs the benefit of all reasonable inferences, Plaintiffs have made out a plausible claim that the films reference a specific product: NFL football.

> 3.     Conclusion

Having examined the works, the Court concludes that Plaintiffs have succeeded in establishing, for the purposes of this Motion, that the films at issue are commercial speech. Moreover, Plaintiffs have sufficiently established that the constitutional protection to be afforded the films may not outweigh Plaintiffs' interests in their own identities.  See Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 65 (1983) (noting that content-based restrictions on non-commercial speech are appropriate "only in the most extraordinary circumstances" but that "regulation of commercial speech based on content is less problematic").  The NFL's Motion on this point is denied.

## B.     Copyright Act

The NFL also argues that section 301 of the Copyright Act, 17 U.S.C. § 301, preempts any right-of-publicity claims Plaintiffs may have in the information at issue.  There is no dispute that the NFL has a valid copyright in the video clips used in the films.  Thus, "[t]he

---

[3]  The NFL seems to unintentionally concede that the films are, at least in part, advertising. "The NFL Videos do not use Plaintiffs' identities to advertise a separate product.  They are the product . . . ." (Def.'s Reply Mem. at 11.)

Copyright Act provides the exclusive source of protection for 'all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of the copyright as specified in [the Act].'" <u>Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.</u>, 991 F.2d 426, 428 (8th Cir. 1993) (quoting 17 U.S.C. § 301(a)).  A state claim is preempted by the Act if: (1) the work in issue is within the subject matter of copyright; and (2) the state-law-created right is equivalent to any of the exclusive rights within the general scope of the Act. <u>Id.</u>

The NFL contends that Plaintiffs' claims fail because the work at issue, namely the video productions, are within the subject matter of copyright.  While there may be no doubt that the videos the NFL makes are copyrightable, Plaintiffs have alleged that the "work" at issue is not the videos themselves, but rather Plaintiffs' own identities. "The 'work' that is the subject of the right of publicity is the persona, <u>i.e.</u>, the name and likeness of a celebrity or other individual. A persona can hardly be said to constitute a 'writing' of an 'author' within the meaning of the Copyright Clause of the Constitution."  1 Nimmer on Copyright § 1.01[B][1][c], at 1-30.  Thus, the work at issue is not within the subject matter of copyright.

Nor is the right of publicity equivalent to any of the exclusive rights in the Copyright Act. As described by the Eighth Circuit, the right of publicity protects "the right of an individual to reap the rewards of his or her endeavors." <u>C.B.C.</u>, 505 F.3d at 824.  Copyright, on the other hand, protects the author's exclusive right to reproduce, distribute, perform, or display expressive works.  17 U.S.C. § 106.  The right of publicity thus protects very different rights than does copyright. <u>See</u> 1 Nimmer on Copyright § 1.01[B][1][c], at 1-29 to

-30 ("Invasion of privacy may sometimes occur by acts of reproduction, distribution, performance, or display, but inasmuch as the essence of the tort does not lie in such acts, pre-emption should not apply. The same may be said of the right of publicity.").

The NFL is not entitled to judgment as a matter of law on its Copyright Act preemption defense.

## C.     Lanham Act

Section 43(a) of the Lanham Act prohibits the

use[] in commerce [of] any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. § 1125(a)(1)(A).  The NFL argues that the First Amendment strictly circumscribes the application of the Lanham Act to "expressive works such as the NFL Films productions at issue." (Def.'s Supp. Mem. at 21.)  The NFL also contends that Plaintiffs' Lanham Act claims fail because Plaintiffs cannot show any likelihood of confusion.

The NFL urges the Court to use a test from the Second Circuit Court of Appeals to determine whether the First Amendment bars Plaintiffs' Lanham Act.  (See Def.'s Supp. Mem. at 21 (citing Rogers v. Grimaldi, 875 F.2d 994, 999 (2d Cir. 1989)).)  According to the NFL, Plaintiffs can prevail on their Lanham Act claims only by showing that the use of their names or images "has no artistic relevance to the underlying work" and "that the use of [their] name[s] or image[s] explicitly misleads as to an endorsement of the work." (Id.)

15

Even if the "explicitly mislead" test is the correct test to use (which Plaintiffs very much dispute), the Court cannot make a determination based solely on the pleadings that the NFL's use of Plaintiffs' names and images does not explicitly mislead anyone. This is a fact-intensive inquiry. It may be that discovery will show that there is no likelihood of confusion/explicit misleading. But that is a matter for discovery, not for a motion for judgment on the pleadings.

Nor is judgment appropriate on the Lanham Act claim for failure to show a likelihood of confusion. The likelihood-of-confusion inquiry is a factual inquiry that is not appropriate for resolution on a motion for judgment on the pleadings. See Anheuser-Busch, Inc. v. Balducci Publications, 28 F.3d 769, 773 (8th Cir. 1994) ("The determination of whether 'likelihood of confusion' exists is a factual determination . . . ."). Thus, the NFL's Motion for judgment on the Lanham Act claim is denied.

**D.     Unjust Enrichment**

The NFL argues that "because Plaintiffs seek to apply the[ir] unjust enrichment claim to challenge the distribution of copyrightable subject matter, the claim is preempted." (Def.'s Supp. Mem. at 26.) In support, the NFL cites a decision of this Court, Heidi Ott A.G. v. Target Corp., 153 F. Supp. 2d 1055, 1067 (D. Minn. 2001) (Magnuson, J.). That decision, however, involved only copyright infringement claims—the plaintiff claimed that the defendant's products were copied from her products. Thus, the Court found the unjust enrichment claims preempted. Heidi Ott, 153 F. Supp. 2d at 1067. Here, Plaintiffs claims are not that the NFL has infringed a copyright, but that the NFL has infringed Plaintiffs' right

16

in their own identities.  Plaintiffs' unjust enrichment claim is not preempted.

Nor is the claim unavailable because Plaintiffs each signed written contracts with the NFL.  The mere existence of a contract, even a contract that purports to address the subject matter of the unjust enrichment claim, will not void all unjust enrichment claims ab initio. See Ventura v. Titan Sports, Inc., 65 F.3d 725, (8th Cir. 1995) (finding that the plaintiff was entitled to recover under quantum meruit/unjust enrichment despite the existence of written contracts).  Plaintiffs have alleged enough to establish an unjust enrichment claim and the NFL's Motion on this point is denied.

**CONCLUSION**

Plaintiffs' filings mention frequently the dire straits of many former football players, who suffer from serious football-related injuries and who did not earn the high salaries that are prevalent today.  The Court does not minimize the situation; it is, however, not relevant to the merits of the current Motion or even to the ultimate resolution of the legal issues in this lawsuit.  On the other hand, the Court urges the parties to consider the plight of former players in any informal resolution of the claims at issue here.

The NFL earns a substantial amount of money from its NFL Films division.  That profit would not be possible without the players who played in the games that are showcased in these films.  Whether or not the NFL infringes on the players' rights of publicity, the NFL might consider determining a fair share of the profit it receives for the films at issue and making a corresponding payment to the pension fund for retired players.  By the same token, the Plaintiffs, who profess great concern about their less-fortunate brethren who suffer long-

17

term health consequences of playing in the League, might be willing to forego individual payment for the good of all former players.  At this juncture, of course, the Court may not order such relief.  However, the Court encourages the parties to consider whether the costs of litigation are justified in light of what appears to be a simple way to resolve the parties' differences.

The NFL has not succeeded in establishing that it is entitled to judgment on any of the claims in the Amended Complaint.  Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion (Docket No. 13) is **DENIED**.


Dated:    January 26, 2010    

                                          s/Paul A. Magnuson    
                                          Paul A. Magnuson
                                          United States District Court Judge

18