# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| DRYER, ET AL.,<br><br>        Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE,<br><br>        Defendant. | Civil No. 09-2182 PAM/AJB<br><br>**PLAINTIFF DAN PASTORINI'S NOTICE OF FILING OF TEXAS ACTION FOR BREACH OF CONTRACT AND LEGAL MALPRACTICE AGAINST MICHAEL D. HAUSFELD AND HAUSFELD LLP** |

TO:  THE HONORABLE COURT AND ALL PARTIES OF RECORD

        PLEASE TAKE NOTICE that plaintiff and putative class representative Dante Anthony Pastorini, Jr. today filed the attached "Plaintiff's Original Petition, Jury Demand and Request for Disclosure" in the District Court of Harris County, Texas.  Plaintiff asserts causes of action therein against his attorneys, Michael D. Hausfeld  and Hausfeld LLP, for breach of contract, legal malpractice, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing.  A true and correct copy of that filing is attached hereto as Exhibit A.

Dated:  November 23, 2012

Respectfully Submitted,

/s/ Jon T. King_____

Jon T. King (Cal. Bar No. 205073;
  *pro hac vice*)
856 Walbrook Ct.
Walnut Creek, CA 94598
Telephone:  (925) 698-1025
Email:  jtk70@comcast.net

***Co-Counsel for Plaintiff Pastorini***

# EXHIBIT A

Cause No. _____

| | | |
|---|---|---|
| DANTE ANTHONY PASTORINI, JR., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | OF HARRIS COUNTY, TEXAS |
| vs. | § | |
| | § | |
| MICHAEL D. HAUSFELD; and | § | |
| HAUSFELD LLP, | § | |
| | § | |
| Defendants. | § | |
| | § | ____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND, AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Dante Anthony Pastorini, Jr. ("Plaintiff" or "Dan Pastorini"), and files this Original Petition, Jury Demand, and Request for Disclosure, complaining of Defendants Michael D. Hausfeld and Hausfeld LLP (collectively, "Defendants" or "Hausfeld"), and brings claims for breach of contract, breach of the covenant of good faith and fair dealing, legal malpractice, and breach of fiduciary duty as follows:

### I.      DISCOVERY CONTROL PLAN

1.      Plaintiff intends to conduct discovery under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

### II.      PARTIES AND SERVICE

2.      Plaintiff Dante Anthony Pastorini, Jr. is an individual who resides in Houston, Harris County, Texas. All pleas, pleadings, motions, discovery, correspondence, and other matters related to this matter should be served upon him at the address below.

-1-

3.      Defendant Hausfeld LLP is a law firm and a limited liability partnership organized under the laws of the District of Columbia and its principal place of business is in Washington, D.C.  Hausfeld LLP can be served with citation and/or process on its registered agent for service of process, which the official records of the District of Columbia list as:

> Hausfeld LLP
> c/o Hilary K. Scherrer, Registered Agent
> 1700 K Street, Suite 650
> Washington, D.C. 20006

At all times material hereto, Defendant Hausfeld LLP has engaged in business in Harris County, Texas, and/or committed a tort, in whole or in part, in Harris County, Texas, and the claims made herein arise out of such activities in Harris County, Texas.

4.      Defendant Michael D. Hausfeld is an attorney and Chairman of Defendant Hausfeld LLP, and a natural person residing in Fairfax County, Virginia, and may be served at his place of business:

> Michael D. Hausfeld, Esq.
> c/o Hausfeld LLP
> 1700 K Street, Suite 650
> Washington, D.C., 20006

At all times materials hereto, Defendant Michael D. Hausfeld has engaged in business in Harris County, Texas and/or committed a tort, in whole or in part, in Harris County, Texas, and the claims made herein arise out of such activities in Harris County, Texas.

### III.      JURISDICTION AND VENUE

5.      Jurisdiction is proper pursuant to Article 5, § 8 of the Texas Constitution. Defendants have done business in this State as defined in TEX. CIV. PRAC. & REM. CODE §17.042, as they have contracted with Plaintiff, a Texas resident, to perform acts in whole or in part in this State, and have committed torts in whole or in part in this State.  Defendants are further subject to general jurisdiction as they have conducted, and continue to conduct, business in this State including in connection with multiple lawsuits and in connection with one or more law firms based in this State.  The amount in controversy exceeds the minimum jurisdictional limits of this Court.

6.      Venue is proper in Harris County, Texas, as (1) all or a substantial part of the events or omissions giving rise to this claim occurred in Harris County, Texas; (2) Plaintiff resided in Harris County, Texas at the time of the accrual of the causes of action detailed herein; (3) the causes of action detailed herein arise from a written contract for legal services entered into by Plaintiff with Defendants in Harris County, Texas and to be performed in whole or in part in Harris County, Texas; (4) Defendants participated in multiple telephonic communications with Plaintiff in Harris County, Texas providing legal services into Harris County, Texas; and (5) the tort causes of action detailed herein pertain to injuries inflicted upon Plaintiff by Defendants in Harris County, Texas.  TEX. CIV. PRAC. & REM. CODE §15.002(a)(1); TEX. CIV. PRAC. & REM. CODE §15.002(a)(4); TEX. CIV. PRAC. & REM. CODE §15.092(a); and TEX. CIV. PRAC. & REM. CODE §15.093.

## IV.  ACTS OF AGENTS

7.      Wherever in this Original Petition it is alleged that Defendant did any act or thing, it is meant that:  Defendants performed or participated in the act, or Defendants' officers, trustees, employees, agents, representatives, or successors, performed or participated in the act on behalf of and under the authority of the Defendants.

## V.     SPECIFIC FACTUAL ALLEGATIONS

8.      This is a simple case of a lawyer and law firm, Defendants Hausfeld LLP and Michael D. Hausfeld, with very large domestic and global ambitions, that have ignored the most basic and fundamental duty of lawyers – do right by your client.  The reason is simple – Plaintiff and numerous of Defendants' other clients do not support the present actions of Defendants to attempt to settle their own class action case in a way that lines the pockets of Defendants with legal fees, creates nonsensical entities orchestrated by Defendants to obtain still more additional side benefits to them, but does nothing to effectively further the interest of Plaintiff and the class members that he represents.

9.      Defendants have thus embarked on overt, strategic gambits to attempt to marginalize Plaintiff, to discredit his commitment to the litigation, and to embarrass and silence

him.  Defendants have refused to honor obligations to pay travel expenses connected with the litigation, and have refused to provide relevant documents and communications to Plaintiff so as to allow him to be fully prepared including in connection with critical court-ordered events.

10.     It is not the first time that Defendants have skirted the law when faced with disagreements over their conduct.  As multiple federal courts have detailed, and of relevance here, Defendants in recent years have been found to have acted in "bad faith," to have engaged in "unacceptable behavior," and to have improperly "attempted to dispense its own form of justice."  A group of *several dozen* states' attorneys general, including Texas', recently rebuked Defendants for their conduct towards class members that Defendants represent.

11.     Numerous of Defendants' co-counsel in other matters have raised Defendants' "secretive and divisive" tactics, their inappropriate generating of "friction" and "tension" mid-litigation, and multiple state courts strongly rejected Defendants' efforts to intimidate other law firms into paying them legal fees to the detriment of class members.  Defendant Michael Hausfeld was fired by his prior law firm just a few years ago over concerns that his novel London office project was losing millions of dollars a year, and as detailed in a public trial, and prior to his firing, he responded to concerns by "screaming" and "yelling" at his partners and attempting to sabotage the firm's relationship with its bank before his termination.

12.     The matters herein are not raised lightly, but are necessary to understand Defendants' capabilities when under real or perceived duress, to understand a pattern of conduct that has now directly reached and impacted Plaintiff and other clients, and to further establish the plausibility of Plaintiff's contentions.  Moreover, some of the matters establish that Plaintiff Pastorini is on good grounds to question whether various actions are in the best interests of clients and the class, which is in fact his responsibility in a class action case.  Nonetheless, Plaintiff Pastorini raises this dispute with significant reluctance, fully recognizing the highly unusual nature of clients in pending litigation needing to take action against their own counsel.

13.     Plaintiff Dante "Dan" Anthony Pastorini is a retired NFL football player.  He played quarterback for thirteen seasons in the NFL for four professional teams.  He played from

1971-79 with the Houston Oilers, in 1980 for the Oakland Raiders, in 1981 for the Los Angeles Rams, and from 1982-83 for the Philadelphia Eagles. Mr. Pastorini was a Pro Bowl selection in 1975 with the Houston Oilers and a member of the 1981 Oakland Raiders Super Bowl championship team.

14.     Plaintiff's lengthy and accomplished service as an NFL quarterback generated substantial quantities of filmed images captured by the NFL Films division of the National Football League ("NFL"). Legal rights relating to those filmed images are the subject of a pending "right of publicity" class action lawsuit against the NFL brought by Plaintiff along with several other notable former professional football players in federal court in Minneapolis, captioned *Dryer, et al. v. National Football League*, Case No. 09-CV-2182 PAM/AJB (the "*Dryer*" Case). Mr. Pastorini's fellow plaintiffs include Fred Dryer, Elvin Bethea, Jim Marshall, Joe Senser, and Ed White, and they represent thousands of other retired NFL players.

15.     Defendant Hausfeld LLP states on its website that it "ranks among the world's top claimants' firms," that it provides "sterling representation to its clients," that it is "dedicated to providing world class service," that its personnel "bring the experience to deliver among the best in domestic and international legal services," that "We offer comprehensive protection of our clients' rights, wherever they may have been infringed," that it maintains "steadfast integrity, and that Defendant Michael Hausfeld is "one of the country's top civil litigators." The firm's website further quotes Defendant Michael Hausfeld as stating that the firm "is singularly dedicated to delivering high caliber, aggressive representation for claimants that is free from conflicts."

16.     Defendants agreed to represent Mr. Pastorini and the other plaintiffs, along with other attorneys, pursuant to an "Agreement for Legal Services" as further described herein.

17.     Defendants have refused repeated requests to honor payment obligations in the "Agreement for Legal Services" that they entered into with their client, Plaintiff Pastorini, and obligations that Defendants have further incurred as the manager of the plaintiffs' litigation expense fund on behalf of Plaintiff. This issue, unfortunately, is not confined to Plaintiff

Pastorini, and extends to other plaintiffs including another residing in the State of Texas.

18.     Additionally, Plaintiff, through his additional representative and on his behalf, has made repeated requests in writing to Hausfeld to obtain copies of basic litigation documents and information and communications with the NFL's representatives, so that Plaintiff can be as well informed as possible in the *Dryer* litigation.  The requested documents are those necessary for Plaintiff to understand publicly referenced settlement discussions, and to be prepared for an upcoming Status Conference set for November 27, 2012, at which all plaintiffs including Plaintiff Pastorini have been specifically ordered by the Court to appear at and participate in person.  Hausfeld has refused to even respond to the request, let alone provide the necessary information.

19.     It has become unmistakably clear, based on express written communications as discussed herein, that Defendants have withheld funds and files and even basic communication with their client, Plaintiff, as a pressure tactic against certain plaintiffs and co-counsel in regards to their good faith views.  The result, unfortunately, jeopardizes Plaintiff's ability to fully participate in the litigation for which Defendants agreed to expressly represent Plaintiff. Defendants' tactics have wasted time and resources, and created unnecessary stress and complications regarding Plaintiff's ability to participate in his own litigation to the fullest of his ability.  These issues are compounded by the relatively short time in which economical arrangements can be made given the resetting of the November 27, 2012 Status Conference, and that it is adjacent to Thanksgiving weekend and its attendant travel volume and complications.

20.     Defendants' conduct raises critical questions about the adequacy and motivations of counsel far beyond the matter of travel expenses, and Plaintiff believes he is duty bound to stand up for his basic rights as Defendants' client, and additionally, as a representative of other clients and putative class members that Plaintiff has undertaken to zealously represent and to be an independent and honest voice.

**A.     The Agreement for Legal Services and Defendants' Control of Funds**

21.     Plaintiff Pastorini has entered into the "Agreement for Legal Services" with

Defendants and certain of the other firms representing the plaintiffs in this matter.  The agreement states on page one that "Attorneys will advance all costs as are reasonable to prosecute the lawsuit, including but not limited to . . . ___travel expenses___ incurred in the prosecution of the action and other necessary and incidental expenses." (emphasis added).

22.     The Agreement for Legal Services further specifically states that Plaintiff is required to "participate actively in the lawsuit" including "by keeping generally aware of the status and progress of the lawsuit."  Plaintiff has done so to the best of his abilities, despite the unfortunate strategic efforts by Defendants directed at him and others.

23.     The Agreement for Legal Services further states that "If Attorneys receive a settlement overture in this matter, that overture will be transmitted to your promptly" and that "Attorneys will not settle your claim without your prior approval."

24.     Defendants created and currently administer the plaintiffs' common litigation fund, out of which various case expenses, including Plaintiff's travel expenses, previously had been paid.  Such expenses have included travel expenses for plaintiffs to attend their depositions, and travel expenses for Plaintiff Pastorini and other *Dryer* plaintiffs to attend a Court ordered meeting with the presiding magistrate judge.

25.     As of one month ago, most such expenses had been paid, although sometimes on a delayed basis and only after repeated inquiries from Plaintiff's other representatives.  However, the present dispute was foreshadowed in mid-October, when Defendants initially refused to pay for Plaintiff Pastorini and three other out-of-town plaintiffs' travel expenses to attend a meeting with Chief Magistrate Boylan in the *Dryer* matter.  As co-counsel Charles Zimmerman wrote to co-counsel Bob Stein on October 11, 2012, "I have conferred with Michael [Hausfeld] and pressed him to have the out of town putative class reps' appropriate travel expenses reimbursed. He now agrees."

26.     Defendants previously stated to the *Dryer* Court and Plaintiff and its other clients, in connection with its motion for appointment of interim lead counsel, that Hausfeld's mid-stream addition to the *Dryer* matter "ensures that this complex action will be directed by able,

-7-

*well-capitalized* and experienced counsel with the *demonstrated willingness to finance large-scale litigation* such as the instant proceeding." *Dryer* Dkt. 121, "Memorandum in Support of Motion for Consolidation of Related Cases and For Appointment of Interim Co-Lead and Liaison Counsel," at 2 (emphasis added).

27.    Recently, however, something has changed.  Defendants now will *not* pay for Plaintiff Pastorini and the other out-of-state plaintiffs to attend the Court ordered status conference set for November 27, 2012.  It should of course do so, regardless of whether it disagrees with the views of those clients on certain issues.  Transparency and vigorous debate should be *desired* in a class action setting in which all concerned must strive to best advocate for the interests of thousands of absent class members. Unfortunately, Defendants have chosen a different approach that violates Defendants' agreements and duties.[1]

**B.    Specific Chronology of Relevant Events.**

28.    In mid-October, when the Court convened a conference at which all plaintiffs were to attend, Plaintiff Pastorini did so.  Defendants have refused to pay for Plaintiff's hotel costs.

29.    On October 25, 2012, the Court entered its "Order / Notice of Status Conference," stating that a status conference would be held on November 9, 2012, that "Plaintiffs' counsel and each named Plaintiff shall be present for the status conference," and that "The following named Plaintiffs shall appear:   John Frederick Dryer; James Lawrence Marshall; Joseph Michael

---

[1] There is significant irony in Defendants' use of the *Dryer* case, and the specific names of Plaintiffs Pastorini, Dryer, Bethea, and White, all out-of-town plaintiffs for whom Defendants now refuse payment of travel expenses, as a significant commercial marketing tool, advertisement and endorsement to obtain other business.  *See, e.g.*, <http://www.hausfeldllp.com/pages/current_investigations/509/dryer-v.-nfl> (last visited November 12, 2012) ("In Dryer v. NFL . . . a group of retired football players (led by Fred Dryer, Jim Marshall, Elvin Bethea, Joe Senser, Dan Pastorini, and Ed White) allege the NFL, including its NFL Films division, has used retired players' likenesses without permission . . ."). Hausfeld also references the case in, for example, attorney biographies on its website, in the "extended" and "short form" firm resumes on its website and submitted to various federal courts in pursuit of leadership positions in other class action cases, and in various "newsletters" that it publishes in efforts to obtain other clients in other potentially lucrative litigation against the NFL, and in cooperative press accounts touting the activities of Defendants.

Senser; Elvin Lamont Bethea; Dante Anthony Pastorini; Edward Alvin White; Fred Lee Barnett; Tracy Anthony Simien; Darrell Alexander Thompson." (Dkt. 222, at 1-2) ("October 25th Order").

30.     On October 25, 2012, Plaintiff's co-counsel Bob Stein emailed Defendants, requesting payment of travel expenses for Plaintiff Dryer to attend a "meet/confer" that the Court suggested occur between the NFL and Mr. Stein, and for which the NFL suggested Mr. Dryer's presence would be helpful. Hausfeld did not respond.

31.     On October 31, 2012, Plaintiff's co-counsel Bob Stein again emailed Hausfeld, noting that he had not received a response to the October 25, 2012 email requesting payment of expenses for Mr. Dryer. Mr. Stein additionally requested payment of expenses for Plaintiffs Dryer, Bethea and White to fly to Minneapolis from their homes in, respectively, Los Angeles, Houston, and San Diego to attend the Status Conference then set for November 9th.

32.     On October 31, 2012, Plaintiff's co-counsel Charles Zimmerman emailed Mr. Stein, responding on behalf of Hausfeld to Mr. Stein's email from earlier that day. Mr. Zimmerman's email incorrectly stated that "the meeting you scheduled with [the NFL's] Gary Gertzog is not an expense of the class litigation fund. This meeting is being conducted at your request and at your discretion only and not something that was authorized or approved by co lead counsel. Therefore, the expenses will have to be covered by those who requested the meeting."

33.     Mr. Zimmerman's October 31 email further stated:

> The Dryer et al Litigation Fund has been depleted and there are not sufficient funds to pay current bills. We will have to determine as co lead counsel whether to request further assessments from participating counsel. ***We cannot pay additional bills unless and until additional cash is contributed. Obviously, this is a matter of concern to all of us***.

> In my view expenses of ***objectors*** to the proposed settlement are not expenses that may be assessed against the class and cannot be advanced by co lead counsel from the Litigation Fund, which will ultimately come out of the class recovery. Therefore, expenses related to attendance at the November 9 hearing will need to be paid from other sources. (emphasis

added).[2]

Defendants were copied on Mr. Zimmerman's email to Mr. Stein, and sent a subsequent email on November 5th endorsing Mr. Zimmerman's response and ability to speak for Defendants.[3]

34.   As evidenced by the email described in the preceding paragraph, Defendants have not fulfilled their duty to timely manage the litigation expense fund, have let the fund be totally depleted, have failed to timely replenish the fund, and have specifically and tactically used these circumstances as a strategic tool against Plaintiff's interest.

35.   On November 1, 2012, the Court entered an "Order" rescheduling the Status

---

[2] The use of the word "***objectors***" is highly troubling, and as all class action firms know exceedingly well, it is specifically meant to tar Plaintiff with a buzzword often used derogatorily to describe so called "professional objectors" who descend on a class action settlement in an attempt to extort a "quick buck" by making frivolous objections to a settlement and quickly being confidentially paid off by the class action attorneys to drop their objections. Moreover, Plaintiff Pastorini's and the other plaintiffs' "Agreement for Legal Services" state that "Attorneys will not settle your claim without your prior approval."  There has been no settlement to which Plaintiff could "object."

[3] Financial affairs regarding the Hausfeld firm, who as stated herein had specifically promised this Court and its clients that it was "well capitalized" in order to gain access to this matter, may merit further attention at a later stage to the extent that it appears to impact any conduct of the firm towards Plaintiffs or class members in any context, including in regards to settlement.  If those representations to Plaintiff were not true, or are no longer true, Defendants have a duty to so advise Plaintiff.

Plaintiff notes the financial distress of Mr. Hausfeld's London office project, designed to inject U.S.-style class actions into Europe, and the subject of testimony in the federal court matter described herein, is also detailed in a February 2012 article about Mr. Hausfeld's London office in *Global Competition Review* and titled "The Great Gamble." <http://www.hausfeldllp.com/content_images/file/2012_03_08%20GCR%20-%20The%20Great%20Gamble.pdf> (last visited November 16, 2012) ("his latest project – the latest empire he seeks to build – might be the one he can't conquer . . . Progress has been slow – some say stagnant . . . It was, in many ways, the undoing of his tenure at his former firm . . . his firm's London office has been a major investment that has seen precious little return  . . . one of the more notable setbacks came in 2010, the UK's court of appeals . . . ruled that the attempt at a US-style class action against [British Airways] was 'fatally flawed' from the outset . . . The whole process has been frustrating, Hausfeld says . . . The two original partners in the office have left the firm.").

Conference at a future date to be determined due to catastrophic weather conditions in the East

Coast. (Dkt. 223). The Order further stated that "in anticipation of said conference the Court

had suggested that a 'meet and confer' session take place between Gary Gertzog, counsel

representing the National Football League, and Robert Stein, one of Plaintiffs' lead counsel."

36.     On November 2, 2012, Plaintiff Pastorini's co-counsel Mr. Stein sent a letter via

email to Mr. Hausfeld requesting copies of basic documents relating to settlement discussion

items. Mr. Hausfeld did not respond. The information requested was to "help settlement efforts

progress" and was specifically identified as the following:

> "Copies of all documents, memoranda and other information you possess regarding legal
> research, discussions or other evaluation of any proposed licensing agency, including
> regarding prospective retired player directors, managers or participants.
>
> Copies of all documents, memoranda and other information you possess regarding [a]
> potential goodwill fund or other benefits which could be conferred upon retired players
> from proceeds of settlement of the Dryer, et al v. NFL lawsuit.
>
> Copies of all information accumulated regarding or from any prospective licensing
> companies which might work with a retired player licensing agency.
>
> Copies of all correspondence to NFL representatives.
>
> [U]pdates from you and Mr. Zimmerman on all conversations with NFL representatives."

37.     On November 8, 2012, the Court entered an "Order / Notice of Status

Conference," rescheduling the November 9th Status Conference for November 27, 2012. (Dkt.

225, at 1). The Court further stated that "All Lead Counsel and each named Plaintiff shall appear

in person for the status conference." *Id.* (emphasis in original). The Court again listed by name

each plaintiff ordered to appear in the October 25th Order, and reiterated that they "shall

appear." *Id.*

38.     On November 14, 2012, Plaintiff Pastorini's additional representative again

emailed Mr. Hausfeld requesting the basic documents and information relating to settlement

discussion items. These are the same items requested in the November 2, 2012 letter to Mr.

Hausfeld described above. Mr. Hausfeld again did not respond.

39.     On November 19, 2012, Plaintiff Pastorini's additional representative again

emailed Defendant Michael Hausfeld requesting payment for transportation for Mr. Pastorini for the November 27, 2012 court proceeding in Minneapolis.  Mr. Hausfeld did not respond.

40.     Additionally, Plaintiff has learned that Defendants have received critical communications in the litigation from the NFL, and have not transmitted them to Plaintiff, in violation of the Agreement for Legal Services.

**C.     Defendants' Pattern of Relevant Conduct in Other Cases.**

41.     Defendants have run afoul of their legal duties in recent years, including to federal court judges, class members, and co-counsel representing plaintiffs.  As discussed below, Defendants have also engaged in pitched battles with several dozen States' attorneys general in just the last few years, who are charged with representing residents of their respective States, including with the State of Texas.

42.      Defendant Michael Hausfeld has been found by federal courts to have acted "in bad faith," to have failed to act with candor towards a federal court overseeing a settlement process, to have improperly retaliated against others, and has engaged in a litany of increasingly troubling conduct in recent years.  In *In re: Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 237 (D.D.C. 2005), the federal court ordered Mr. Hausfeld to pay approximately $1 million to a co-counsel it deprived of legal fees, stating that Mr. Hausfeld "rolled the dice . . . Hausfeld could see a storm coming . . . Hausfeld knew of the bad blood between himself and [the other firm.] Making an allocation of the fee without consulting anyone except itself was obviously looking for trouble . . . it will have to pay the price of the mistake that it made . . . I have tried to emphasize the demanding level of trust that is imposed by the court on lead counsel . . . **[the Court will not be] condoning what I consider to be unacceptable behavior by lead counsel . . . [or] fundamental deviations from what this court can reasonably expect when it delegates the responsibility to lead counsel**." (emphasis added).  The Court rejected Hausfeld's invitation for it to address his contention that the co-counsel firm had an "unfounded vendetta against Michael Hausfeld."  Id., at 242, n.17.

43.     More recently, in *Michael Hausfeld v. Cohen Milstein Sellers & Toll, PLLC*, No.

-12-

06-CV-826, 2009 WL 4798155, (E.D. Pa. Nov. 30, 2009), the federal court adjudicated the

highly unpleasant fall out from Mr. Hausfeld's prior law firm firing him, and repeatedly rebuked

Mr. Hausfeld.  After four days of testimony, the Court stated:

> "***In the settlement conferences in my chambers, Hausfeld never mentioned*** HLLP
> [Hausfeld's new law firm] intended to give [Hausfeld's] London firm a percentage of the
> Air Passenger fees before HLLP split the total fees." (Page *8).

> "***Without notifying CMST [Hausfeld's prior law firm] or me [the federal judge],***
> ***HLLP wired $3,075,868.12 to the*** [Hausfeld] ***London firm***." (Page *11).

> "HLLP had ***no authority*** to divide the award among three firms, wire $3,075,868.12 to
> the [Hausfeld] London firm, and place CMHT's alleged share into its own escrow
> account ***before informing CMST or me of its deviation*** from the Confidential
> Agreement. Its ***unilateral actions*** violated the letter and spirit of the Confidential
> Agreement." (Page *15).

> "HLLP took an ***extraordinary risk*** by unilaterally sending $3,075,868.12 to the
> [Hausfeld] London firm." (Page *18).

> "HLLP must pay CMST its remaining portion of the Air Passenger fees, $1,537,934.06,
> within 48 hours of this Order." (Page *18).

> "Eighteen days before the evidentiary hearing, however, HLLP ***unilaterally chose to***
> ***retaliate*** by transferring approximately $3 million of the Air Passenger fees to the
> [Hausfeld] London Firm . . .

> ***Rather than seek judicial resolution, which is the hallmark of our legal system,***
> ***HLLP attempted to dispense its own form of justice***.  . . . ***HLLP acted in bad faith***."
> (Page *18) (all emphasis added).[4]

44.     Furthermore, Hausfeld has unfortunately run afoul of several dozen states'

attorneys general, including the Texas Attorney General, in just last few years even though they

are charged with representing the same aggrieved parties.  This further reinforces that Plaintiff is

correct to vigorously monitor whether Defendants' settlement efforts are in the best interests of

---

[4] There are four days' worth of publicly available trial testimony in the docket.  It includes
adverse testimony from numerous of Mr. Hausfeld's partners, and describes Mr. Hausfeld
"screaming" and "yelling" at his firm's managing partner upon learning that Mr. Hausfeld's
partners disagreed with him on numerous issues including the operation of the London office that
Mr. Hausfeld established and that was losing millions of dollars per year.

him and the class that he represents, and should not be retaliated against for doing so.  *See*

*Radosti v. Envision EMI*, LLC, 717 F. Supp. 2d 37, 49 (D.D.C. 2010) ("On April 14, 2010, the

Attorneys General of twenty-two states (including the District of Columbia) filed a Brief Amicus

Curiae Opposing Final Approval of [Hausfeld's] Proposed Settlement Agreement. The Attorneys

General contend that the [Hausfeld's] settlement agreement should be subjected to heightened

scrutiny as a coupon settlement pursuant to the Class Action Fairness Act of 2005, ("CAFA").

The Attorneys General also argue that the voucher payments offer low value compared to

disproportionate attorney and incentive fees and do not represent a reasonable settlement in light

of the strength of Plaintiffs' case."

45.     There is another recent example of Defendants' actions that demonstrates that

Plaintiff is correct to question Defendants' actions in litigation.  In *In re Municipal Derivatives*

*Antitrust Litig.*, MDL No. 1950, Case 1:08-md-01950-VM, U.S. Dist. Ct., S.D.N.Y., Letter from

the New York Attorney General's Office to Judge Marrero, Docket No. 317, July 12, 2011,

pages 1 and 2:  "The Working Group of 25 States (the "States") writes in response to Interim

Class Counsel's [led by Michael Hausfeld] July 8, 2011 letter to Your Honor requesting that the

Court stay the implementation of the States' $92 million settlement . . . Interim Class Counsel

continue to press their baseless arguments . . . Class Counsel falsely suggests that the similar size

of the settlements between BAC, UBS, and JPMC indicates that the States did not tailor its

damages analysis to the wrongful conduct of the settlement defendants . . . Over the last seven

months, Interim Class Counsel's ***dilatory tactics have harmed and continue to harm the very***

***entities it ostensibly represents*** by denying them the opportunity to consider the merits of

participating in the settlements the States have procured in an exercise of their enforcement

authority . . . ***these tactics must stop*** . . ." (emphasis added).

46.     The book *Inside a Class Action*, written with extensive access to Mr. Hausfeld

and his cooperation and based on thirty hours of recorded interviews with Mr. Hausfeld, quotes

from a letter from Mr. Hausfeld's co-lead counsel Robert Swift to U.S. District Judge Korman

stating that Mr. Hausfeld "has been secretive and divisive, and we would have no confidence in

his judgment going forward," (page 103), and elsewhere makes reference to Mr. Hausfeld

excluding co-counsel from negotiations (page 239, 241), mocking co-counsel, passing secret

notes deriding them during presentations and showing the note to the author (page 203).[5]  With

respect to failures to consult with a case's plaintiffs' Executive Committee, the book further

states "When he got impatient, there were those who thought his obstinacy and arrogance took

over." (p. 231), and describes repeated "yelling," "bellowing," and swearing at his co-counsel.

(page 164, 165, 214).

   47.   *Inside a Class Action* further describes how Mr. Hausfeld "set up each case like a

board game . . . Those who shared his vision were good, and those who differed were bad."

(page 35). 6  That approach is evident now; Plaintiff apparently falls on the "bad" side of

---

[5] Jane Schapiro, *Inside a Class Action* (University of Wisconsin Press, 2003).

[6] Mr. Hausfeld unfortunately pushed a series of unsuccessful actions against other plaintiffs'
lawyers in the mid-2000s stemming out of antitrust actions against Microsoft.  Initially, Federal
Judge Motz rejected Mr. Hausfeld's efforts to secure preliminary approval of a dubious and
heavily disputed class action settlement, objected to by other plaintiffs' counsel, that
envisioned the creation of a ***new entity, similar to one championed by Defendants in the Dryer
case***.  *See In re Microsoft Corp. Antitrust Litig.*, 185 F. Supp. 2d 519, 527(D. Md. 2002), stating
that "the present record establishes that ***the Foundation contemplated by the agreement is
critically underfunded***." (emphasis added).

Hausfeld then launched cases against other plaintiffs' lawyers that had successfully settled
numerous state court cases against Microsoft, seeking a cut of their legal fees.

*See, e.g.,* James Rowley, "Legal Fee Fight Erupts over Microsoft Case," *Seattle Times /
Bloomberg*, Jan. 7, 2004 ("Hausfeld and Chesley have asked U.S. District Judge Frederick Motz
in Baltimore, the judge overseeing the nationwide case, to 'fairly compensate' them . . ."
<http://seattletimes.com/html/businesstechnology/2001831184_micrlawyers07.html> (last
visited, November 16, 2012); Laurie Cunningham, "Lawyers in U.S. Microsoft Case Want Cut
of Fees in Miami Suit," *Daily Business Review* (the Florida "3rd District Court of Appeal seemed
unsympathetic.  'You got paid for your case in federal court and now you want to get paid for
their case?' Judge Juan Ramirez Jr. asked. 'How is that fair?'"
<http://www.law.com/jsp/article.jsp?id=1090180159272> (last visited November 16, 2012)

 *See also Rankin et al. v. Microsoft*, No. 00 CVS 4073, Superior Court, Wake County, State of
North Carolina, June 10, 2004 (detailing other court rejections of Mr. Hausfeld's efforts against
other plaintiffs' counsel in federal court, and in state court in Tennessee and Florida, denying his
motion to intervene, and stating that "The Federal Action Plaintiffs' Attorneys were never the
attorneys of record. "Further delay of the settlement in order to resolve a fee dispute can only
have adverse consequences that would frustrate the public policy goals that the settlement might

Defendants' calculus because of Plaintiff's concern over Hausfeld's proposed settlement efforts.[7]

48.     Defendants' pattern of misconduct towards Plaintiff, involving numerous breaches of fundamental duties, is consistent with Hausfeld's pattern of past behavior in other matters as described herein, including in many instances where Hausfeld should have been working collaboratively, not adversarially.  Similarly, Hausfeld here has acted at odds with the interests of his own client, Plaintiff, instead of choosing collaboration and transparency.  Plaintiff has and will continue to suffer damage in Texas as a result of Defendants' multiple breaches of contract and fundamental duties.

49.     Plaintiff Pastorini and the other plaintiffs will not be bullied, shamed or worn-down in their efforts to represent their interests and class members' interests.  Plaintiff, by this action, seeks Court assistance to require Defendants to live up to their fundamental duties owed to Plaintiff.

## V.     CAUSES OF ACTION

## A.     Breach of Contract

50.     Plaintiff incorporates by reference the allegations stated above.

51.     Plaintiff entered into a valid and binding for legal services with Defendants.

52.     By the acts alleged herein, Defendants breached and continue to breach the contract.

53.     Plaintiff has been damaged as a result of the breaches by Defendants.

54.     Therefore, Plaintiff is entitled to an award of actual damages from Defendants and

---

perpetuate . . . and would delay . . . benefit [to] the most under-funded public schools in North Carolina . . . The Court does not find a legal argument to support the intervention nor does it find the interests of the North Carolina class should be delayed or prejudiced in order to resolve a fee dispute between attorneys."
<http://www.ncbusinesslitigationreport.com/Order%20denying%20motion%20to%20intervene.rtf> (last visited November 16, 2012).

[7] *See also In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, U.S. Dist. Ct., N.D. Cal., Dkt. 244, at 4 (Defendants' co-lead counsel Hagens Berman LLP stating that Defendants' actions in managing the case have caused "friction" and "tension," violate the duties of a co-lead counsel appointment, and that Defendants "rebuffed" efforts at communication).

all other appropriate relief.

**B.      Breach of the Covenant of Good Faith and Fair Dealing**

55.      Plaintiff incorporates by reference the allegations stated above.

56.      Plaintiff's Agreement for Legal Services with Defendants includes not only express written provisions, but also terms and conditions, which although not formally expressed, are implied by law.  Such terms are as binding as the terms that are actually written in the Agreement for Legal Services entered into between Plaintiff and Defendants.

57.      Inherent in all contracts and agreements is a covenant that the parties will act in good faith and deal fairly with each other in the performance of their respective covenants and obligations under the agreement and not take any action that will injure the other party or compromise the benefit of the agreement.

58.      The obligation of Defendant to abide by the covenant of good faith and fair dealing is heightened by the imbalance of power between Defendants and Plaintiff that allowed Defendants, in their position as trusted legal representatives, to engage in the conduct described in this Original Petition.

59.      As a proximate result of the breach of the covenant of good faith and fair dealing by Defendants, Plaintiff has been damaged.

60.      Therefore, Plaintiff is entitled to an award of actual damages from Defendants and all other appropriate relief.

**C.      Legal Malpractice**

61.      Plaintiff incorporates by reference the allegations stated above.

62.      As Plaintiff's attorneys, Defendants owed and owe Plaintiff a duty of care.

63.      Defendants failed to use ordinary care in representing Plaintiff.

64.      Defendants failed to do that which an attorney of ordinary prudence would have done under the same or similar circumstances.

65.      The acts and omissions of Defendants proximately caused and continue to cause damage to Plaintiff.

66.     Therefore, Plaintiff is entitled to an award of actual damages from Defendants, and all other appropriate equitable relief.

67.     Because Defendants acted knowingly, intentionally, and maliciously, Plaintiff is entitled to exemplary damages and other relief as appropriate.

**D.     Breach of Fiduciary Duty**

68.     Plaintiff incorporates by reference the allegations stated above.

69.     As Plaintiff's attorneys, Defendants owed and owe Plaintiff fiduciary duties of the utmost and scrupulous good faith, honesty, undivided loyalty, and due care.

70.     Defendants' acts and omissions were not and are not fair and equitable to Plaintiff.

71.     Defendants placed and continue to place their own interests ahead of the interest of their client, Plaintiff.

72.     Defendants have used, and continue to use, their position to gain benefits for themselves at the expense of Plaintiff.

73.     Defendants have failed and continue to fail to fully and fairly disclose important and material information to Plaintiff.

74.     Defendants' breaches of fiduciary duty proximately caused and continue to cause damage to Plaintiff.

75.     Therefore, Plaintiff is entitled to recover actual damages from Defendants and further equitable relief.

76.     Because Defendants acted knowingly, intentionally, and maliciously, Plaintiff is entitled to exemplary damages and other relief as appropriate.

## Request for Injunctive Relief – All Defendants

77.     Plaintiff seeks an Order of the Court permanently enjoining all Defendants, jointly and severally, from continuing to violate the terms of the Agreement for Legal Services.

## Exemplary Damages – All Defendants

78.     The conduct of each Defendant as set forth herein constituted fraud, malice, or

gross negligence such that each Defendant is liable for exemplary damage from which Plaintiff seeks judgment of the Court.

## VI.     REQUESTS FOR DISCLOSURE

79.     Plaintiff requests that Defendants disclose within 50 days of service of this request the information or material described in Rule 194.2(a)(1) of the Texas Rules of Civil Procedure.

## VII.    NO FEDERAL QUESTIONS

80.     Plaintiff expressly affirms that no federal questions, claims, or causes of action are asserted against any Defendant.

## VIII.   JURY DEMAND

81.     Plaintiff requests trial by jury.

## IX.     CONDITIONS PRECEDENT

82.     All conditions precedent to Plaintiff's claims have been performed or have occurred.

## X.      PRAYER

83.     For these reasons, Plaintiff asks that the Defendants be cited to appear and answer and the Plaintiff have judgment against the Defendants for the following:

a.     Actual damages as allowed by law;

b.     Exemplary / punitive damages as allowed by law;

c.     Injunctive relief restraining Defendants from continued violations of their Agreement for Legal Services and duties owed to Plaintiff;

d.     Declaratory relief (TEX. CIV. PRAC. & REM. CODE §37.002, describing the "Uniform Declaratory Judgments Act," whose "purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" and which "is to be liberally construed."); TEX. CIV. PRAC. & REM. CODE §37.003 (the court "has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."); TEX. CIV.

PRAC. & REM. CODE §37.004(a) ("A person interested under a . . . written contract, or other writings constituting a contract, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder" and (b) "A contract may be construed either before or after there has been a breach.").

e.    Any other applicable equitable relief;

f.    Reasonable and necessary attorneys' fees and expenses;

g.    Prejudgment and post-judgment interest as allowed by law;

h.    Costs of suit; and

i.    All other relief, general and special, legal and equitable, to which Plaintiff may be entitled.

Dated:  November 23, 2012                    Respectfully Submitted,

                                            /s/ Dante Anthony Pastorini, Jr.

                                            Dante Anthony Pastorini, Jr., *Pro Se*
                                            1316 Stanford St.
                                            Houston, TX 77019
                                            Tel:  (979) 451-9080
                                            Email:  dp7@dpastorini.com