UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John Frederick Dryer, James
Lawrence Marshall, Joseph
Michael Senser, Elvin Lamont
Bethea, Dante Anthony Pastorini,
Edward Alvin White, Fred Lee
Barnett, Tracy Anthony Simien,
Darrell Alexander Thompson,
Jim Ray Smith, Irvin Acie Cross,
Bruce Allan Laird, Brian Duncan,
Reginald Joseph Rucker, Billy
Joe Dupree, Mark Gregory Clayton,
Preston Pearson, Reginald
McKenzie, Joseph Barney Lemuel,
Jackie Larue Smith, Paul James
Krause, James Nathaniel Brown,
and Michael James Haynes,
on behalf of themselves and all
others similarly situated,

Civil No. 09-2182 (PAM/AJB)

             Plaintiffs,

v.

**MEMORANDUM AND ORDER**

National Football League,

             Defendant.

---

This matter is before the Court on Plaintiffs' Motion for Preliminary Approval of Settlement. For the reasons that follow, the Motion is granted.

**BACKGROUND**

In brief, this case involves former professional football players who contend that the NFL is violating their common-law and statutory rights of publicity.

This litigation has been contentious from the outset. However, after months of negotiations, and due to the yeoman's efforts of a group of Plaintiffs, their counsel, the NFL, and the Magistrate Judge assigned to this case, Chief Magistrate Judge Arthur J. Boylan, the parties reached a settlement. This settlement provides for a fund overseen by a panel of former players (the "Common Good Entity") that will distribute payments to assist former players and their families, and for a licensing agency to market former players' publicity rights, with the blessing (and the use of some trademarks and copyrights) of the NFL. Thus, for example, a former player may, under the settlement and through the licensing agency, sell to the public a jersey from his former team with his name emblazoned on the back.

Despite the benefits of the settlement, a group of Plaintiffs opposes the agreement. These Plaintiffs contend that the settlement is not appropriate because it does not directly benefit them, ignoring the fact that the settlement in fact directly benefits those in whose name this lawsuit was purportedly brought: the players who toiled in obscurity and now are destitute. The opposing Plaintiffs contend that this Court faces reversal if it approves the settlement, because the settlement requires an impermissible cy pres distribution of settlement proceeds. In addition, the opposing Plaintiffs contend that the Plaintiffs supporting the settlement have failed to maximize the money the NFL will pay by failing to determine the monetary value of the rights Plaintiffs will assign to the licensing agency under the terms of the settlement.

**DISCUSSION**

Approval of a class action settlement under Federal Rule of Civil Procedure 23(e) is a two-step process; first, the Court must enter a preliminary approval order, and second, after providing notice of the proposed settlement to the class and a final fairness hearing is conducted, the Court must enter a final approval order.

The Court analyzes "four factors in determining whether a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 932 (8th Cir. 2005). "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is [the first factor.]" Id. at 933 (citation omitted). The last of these factors is analyzed at the final approval stage, following class notification.

**A.       Factors**

Despite the opposing Plaintiffs' belief in the merits of their case, a realistic view of this matter reveals serious difficulties both with Plaintiffs' claims and with their chosen vehicle for redressing their claims. This Court has held that the statute of limitations for Plaintiffs' claims is 6 years, thus severely limiting the time period for which damages might apply. More noteworthy, however, are the problems with class treatment of this action. The Court has stated on more than one occasion that the certification of a class action in this matter is highly doubtful, at best. And absent class treatment, it is unlikely that any single

Plaintiff's claim is so valuable as to warrant engaging in the protracted litigation that is likely to follow if this case is not resolved. The merits of the case weigh very heavily in favor of the settlement before the Court.

This litigation has been protracted and contentious for more than three years, and is not likely to be less so should the settlement fall by the wayside. Thus, the complexity and expense of further litigation of this matter weigh heavily in favor of the settlement.

The final factor that the Court is required to consider at the preliminary approval stage is the financial condition of the NFL. This factor is not at issue here—the NFL is able to pay any judgment against it. Thus, this factor does not weigh for or against the settlement.

Although generally a matter for the final approval stage, the Court must here address the opposition to the settlement, in the form of opposing Plaintiffs' contentions regarding the settlement's shortcomings. The most vociferous of these contentions is that the settlement constitutes an impermissible cy pres distribution of the settlement funds, with the subtext that cy pres distributions are against public policy and thus that this settlement is likely to be overturned on appeal.

This settlement is not a cy pres distribution of funds. Rather, the settlement merely creates an administrative vehicle, overseen and directed wholly by members of the Plaintiff class, to fairly and directly distribute the proceeds of the settlement to the class. This is not a case where the Court is directing that settlement proceeds be paid to a third party; rather, the settlement proceeds will be paid to members of the Plaintiff class, and specifically to those members of the class who need it most. It is double-speak for the opposing Plaintiffs

to complain about the establishment of a fund that class members will control and also complain that there is no "outsider" on the board of the fund to ensure that the fund is run in a businesslike, economical way.

It bears repeating:  the individuals who originally brought this lawsuit and who now oppose the settlement rode into Court on the banner of saving their downtrodden brethren, those who had played in the NFL yet today were penniless and, often, suffering from injuries or illnesses directly related to their playing days.  It is the height of disingenuousness for these same Plaintiffs to now complain, like children denied dessert, that the settlement does not benefit enough the individuals who brought the lawsuit.  The benefits of this settlement to the class are plain:  it will assist those who most need assistance, and will resolve the very problem that this lawsuit seeks to address by allowing former players true access to the value of their rights of publicity.

Every hour of attorney time spent opposing the settlement only diminishes the value of that settlement to the members of the class.  The Court urges the opposing Plaintiffs to consider their less fortunate teammates before deciding to mount further opposition such a thoughtful, beneficial resolution to this case.

## B.  Settlement Class

To effectuate the Settlement, the Court hereby conditionally certifies the Settlement Class, pursuant to Fed. R. Civ. P. 23(b)(3), defined as follows:

> All individuals who, prior to or as of the date of this Order, were or are on the roster of any Member Club and who, as of the date of this Order, (a) have retired, formally or informally, from playing professional football with the

NFL or any Member Club, or (b) were formerly on any roster of any Member Club and are no longer under contract to a Member Club and are not seeking active employment as an NFL player with any Member Club (collectively, "Retired Players"); and for Retired Players who are deceased, all of their respective heirs, executors, administrators, beneficiaries, successors, and assigns who own or control their Publicity Rights.

In support of the conditional certification, the Court finds, solely for purposes of the Settlement, that:

    a.    The Settlement Class is so numerous that joinder of all members is impracticable;

    b.    There are questions of law or fact common to the Settlement Class;

    c.    The claims of the representatives of the Settlement Class are typical of the claims of the Settlement Class;

    d.    The representatives of the Settlement Class will fairly and adequately protect the interest of the Settlement Class; and

    e.    The questions of law or fact common to the Settlement Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Darrell Anthony Thompson, Fred Lee Barnett, Tracy Anthony Simien, Lemuel Joseph Barney, James Nathaniel Brown, Mark Gregory Clayton, Irvin Acie Cross, Brian Duncan, Billy Joe Dupree, Michael James Haynes, Paul James Krause, Bruce Allan Laird, Reggie McKenzie, Preston Pearson, Reginald Joseph Rucker, Jackie Larue Smith, and Jim Ray Smith (the "Settling Plaintiffs") are selected to be representatives for the Settlement Class.

On December 12, 2012, the Court appointed Daniel E. Gustafson of the law firm Gustafson Gluek PLLC as Plaintiffs' Lead Settlement Counsel for the Class (Docket No.

250).  On January, 12, 2103, the Court further clarified Mr. Gustafson's duties as Plaintiffs' Lead Settlement Counsel (Docket No. 252) and, on February 25, 2013 (Docket No. 256), the Court announced that a settlement had been reached and instructed Mr. Gustafson to take the appropriate steps to seek approval of the proposed Settlement.

Pursuant to Fed. R. Civ. P. 23(g), the Court now appoints Mr. Gustafson as Plaintiffs' Lead Settlement Counsel for the Settlement Class.  Mr. Gustafson is familiar with the claims in this case and has done work investigating these claims. He has consulted with other counsel in the case and has experience in handling class actions and other complex litigation. He has knowledge of the applicable laws and the resources to commit to the representation of these Class Members.  At this time, Plaintiffs' Lead Settlement Counsel shall have the responsibility for overall case management and litigation responsibility on behalf of the Settlement Class.

Plaintiffs' Lead Settlement Counsel shall be the contact between Plaintiffs' counsel and Defendant's counsel and shall direct and coordinate activities on behalf of the Settlement Class.  Plaintiffs' Lead Settlement Counsel shall also be responsible for communicating with the Court, filing any motions or pleadings on behalf of the Settlement Class, and for receiving and, as appropriate, distributing to other Plaintiffs' counsel Orders from the Court and documents from opposing counsel.  Service by the Defendant on Plaintiffs of any papers shall be deemed to be complete for all purposes when a copy is served on Plaintiffs' Lead Settlement Counsel.

**C.    Notice**

The proposed Notice Plan is hereby approved, including the form of Notice attached to the Settlement Agreement, in accordance with the Notice Plan submitted by Plaintiffs' Lead Settlement Counsel. The Court finds that notice given pursuant to the terms of the Settlement Agreement and as set forth in the Notice Plan is reasonable and constitutes the best notice practicable under the circumstances, constitutes due and sufficient notice of the Settlement and the matters set forth to all persons entitled to receive notice, and fully satisfies the requirements of due process and of Federal Rule of Civil Procedure 23.

By no later than **May 31, 2013**, the Court directs Plaintiffs' Lead Settlement Counsel to provide mailed notice to all Class Members with known addresses in accordance with the Notice.  Plaintiffs' Lead Settlement Counsel shall also cause the publication of the Summary Notice Plan to be completed by **August 1, 2013**.  Counsel for Defendant is ordered to provide notice to appropriate Federal and State officials, as required by 28 U.S.C. § 1715.

**D.    Exclusions**

Any Class Member who wants to be excluded from the Settlement Class must submit a written request for exclusion postmarked on or before **August 30, 2013**. The request for exclusion must follow the procedures set forth in the Notice, and must include:

    a.      The individual's full name, current address, and telephone number;

    b.      The individual's e-mail address, if available;

    c.      The years the individual (or the deceased NFL Player) played in the NFL or AFL and the name(s) of the Member Club(s) that individual (or the deceased NFL Player) played for; and

    d.      The individual's signature (even if represented by an attorney) and the date on which the request for exclusion was signed.

The request must be sent to:

**NFL Retired Players Publicity Rights Settlement Exclusion**
**P.O Box 2899**
**Faribault, MN 55021-8699**

The Court hereby approves such procedures as fair and reasonable.

Any Class Member who does not submit a timely, written request to be excluded from the Settlement Class will be bound by all proceedings, orders, and judgments relating to the Settlement, whether favorable or unfavorable, including the dismissal of the case with prejudice and the release of Defendant from liability to members of the Settlement Class with respect to all of the Released Claims.

## E.    Objections and Intervention

Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the proposed Settlement and show cause why the same should not be approved, must serve and file the objection with the Court on or before **August 30, 2013**.

Any objection must comply with the following requirements. It must:

    a.      be made in writing and include a reference to the case by name and number;

    b.      contain the objector's full name and current address and the name of the retired NFL player  (if not the objector);

    c.      declare that the objector *either* was formerly on the roster of a Member Club and is now retired from the NFL *or* owns or controls the Publicity Rights of a Retired Player;

d.      state the specific reasons for the objection;

e.      describe and attach copies of any evidence the objector intends to offer in support of his or her objection at the Final Approval Hearing; and

f.      state specifically whether the objector intends to appear in person at the Final Approval Hearing.

The objector must sign and date the objection. Class Members who exclude themselves from the Settlement Class are not eligible to object to the Settlement.

Copies of all materials filed with the Court must also be served by first class mail upon the following counsel on or before the date on which they must be submitted to the Court:

> Daniel E. Gustafson, Esq.
> Gustafson Gluek PLLC
> Canadian Pacific Plaza
> 120 South 6th Street, Suite 2600
> Minneapolis, MN 55402
> Telephone:  (612) 333-8844
>
> Daniel J. Connolly, Esq.
> Faegre Baker Daniels LLP
> 2200 Wells Fargo Center
> 90 S. Seventh Street
> Minneapolis, MN 55402
> Telephone:  (612) 766-7806

No person is entitled to object to the Settlement, to the final judgment to be entered in the case, to any award of Settling Plaintiffs' Counsel's fees, costs, expenses, and disbursements or service awards to Settling Plaintiffs, or otherwise to be heard, except by serving and filing the written statement in the form and manner, and by the date, required herein.  Any person who fails to object in the manner and by the date required will be

deemed to have waived any objections, and will be forever barred from raising such objections in this or any other action or proceeding.  Any papers not filed and served in the prescribed manner and by the date required may not be considered at the Final Approval Hearing. Any responses to objections and Settling Plaintiffs' Motion for Final Approval and supporting documents must be served and filed with the Court on or before **September 6, 2013**.

**F.      Attorney's Fees, Expenses, and Service Awards**

Settling Plaintiffs' Counsel must serve and file their applications for attorneys' fees and expenses no later than **May 30, 2013**.  Each application for attorneys' fees and/or expenses must include an affidavit from a member of the law firm seeking attorneys' fees and expenses attaching detailed time and expense reports that are in compliance with the requirements set forth below:

a.      Only time and expenses authorized and incurred on matters that advance the litigation on behalf of all class members will be considered as compensable.

b.      "Read and review" time will not be compensated unless the law firm was assigned to work on the submission or otherwise had a compelling reason to do so. No time or expense spent on developing or processing a case for an individual client will be considered or should be submitted.

c.   Although attorney fee requests will be viewed through the <u>Johnson</u> prism[1], the analysis first requires identifying "compensable" time through an illustrative list of germane questions such as those that follow:

   i.   Was the activity authorized?

   ii.   Was the time properly described?

   iii.   Was it necessary?

   iv.   Was it reasonable?

   v.   Was it excessive?

   vi.   Was it duplicative?

   vii.   Did the activity actually advance the litigation on behalf of the class?

d.   Essentially, the only time that is compensable is:

   i.   Time which is properly and timely documented;

   ii.   Time which was authorized; and

   iii.   Time which was necessary, reasonable and actually advanced the litigation on behalf of the class.

e.   The following categories are examples of time that will not be compensated absent extraordinary circumstances:

---

[1] <u>Johnson v. Georgia Highway Express</u>, 488 F.2d 714 (5th Cir. 1974).  The <u>Johnson</u> factors for determining the amount of an attorney fees award are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the political undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

    i.      Read and review time for persons not overseeing or directly participating in a project.

    ii.     Time spent by each firm creating and compiling any monthly time and expense reports.

    iii.    All time and expense descriptions that are incomplete.

    iv.    Clerical time related to file management.

    v.      Time billed by two or more people from the same firm unless both people are required to attend the same court hearing or meeting or are reasonably necessary to attend or work on a project together.

f.    With regard to the submission and reimbursement of expenses:

    i.      Expense reports should itemize out-of-pocket, case-related expenses on a month by month basis since inception. The report should have a column for the monthly amounts and the column for the cumulative amounts. If there is a "Miscellaneous/Other" expense item on a report, the item must describe on that month's report the nature of the "Miscellaneous/Other" item.

    ii.     Routine office supplies are not compensable expenses. Good judgment shall be used on travel and other expenses, and shall be kept within reasonable limits. Personal expenses such as entertainment will not be allowed. Airline travel is to be billed at coach fare; any upgrades will be at the individual's own expense.

    iii.    Unless otherwise addressed below, each expense claim must be properly documented by a receipt or some other form of proof of payment acceptable for ultimate presentation and approval by the Court.  Copies of receipts should be attached to the monthly report for which those expenses were incurred. Originals must be available for production upon request. Cash advances will not be considered for reimbursement without evidence of payment made with the case.

    iv.    All costs of a substantial nature that fall under the following categories qualify to be submitted for consideration for reimbursement.  An illustrative list includes:

1. **<u>Fax charges (only actual long distance charges):</u>** Contemporaneous records should be maintained and submitted showing faxes sent and received.

2. **<u>Postage, Shipping, Courier, Certified Mail:</u>** All claimed expenses must be documented with bills showing the sender, origin of the package, recipient, and destination of the package. A contemporaneous postage log or other supporting documentation must be maintained and submitted. Postage charges are to be reported at actual cost.

3. **<u>Printing & Photocopying (in-house):</u>** A contemporaneous photocopy log or other supporting documentation must be maintained and submitted. The maximum copy charge is $0.15 per page.

4. **<u>Computerized research - Lexis/Westlaw:</u>** Claims for Lexis, Westlaw, and other computerized legal research expenses should be in the exact amount charged to the firm for these research services. Copies of all computerized research bills must be submitted with notations as to which charges relate to this litigation.

5. **<u>Telephone - local and long distance:</u>** Long distance and cellular telephone charges must be documented. Copies of the telephone bills must be submitted with notations as to which charges relate to this litigation.

6. Airfare (Coach rate).

7. Reasonable ground transportation.

8. Reasonable hotel.

9.  Reasonable meals.

10.  Reasonable other (e.g., parking).

11.  Car rentals, cabs, etc.

12.  Investigative services.

13.  Assessments.

On or before **June 30, 2013**, Plaintiffs' Lead Settlement Counsel shall review each application for attorneys' fees and reimbursement of expenses and make a comprehensive audit to assure that the application complies with the requirements set forth above and make recommended adjustments to the Court, if any, to the requested attorneys' fees and expenses for each law firm.  Plaintiffs' Lead Settlement Counsel shall also recommend to the Court a specific amount that he believes should be awarded to each law firm depending on the quantity and quality of that firm's contribution to the overall outcome of the litigation.

Any objection to the applications for attorneys' fees, expenses or to the adjustments and/or recommendations of Plaintiffs' Lead Settlement Counsel must be served and filed with the Court on or before **August 30, 2013**.  In connection with the Final Approval Hearing, the Court or its designee will, based on its review of such objections and recommendations, make awards to Settling Plaintiffs' Counsel.

On or before **June 30, 2013**, Plaintiffs' Lead Settlement Counsel shall also serve and file any requests for service awards for the Settling Plaintiffs.  Such requests shall set out the amount of service award requested for any Settling Plaintiff, if such a request is made, and set forth in detail the basis for each such request.  Any objections to these requested service awards shall be served and filed on or before **August 30, 2013**. In connection with the Final Approval Hearing, the Court or its designee will, based on its review of such recommendations and objections, make awards based on such applications.

## G.   Administrator

Pursuant to the proposal set forth in the motion for preliminary approval, Rust/Kinsella is designated as the Settlement Administrator. The Administrator shall:

a.    implement the notice plan in conjunction with Plaintiffs' Lead Settlement Counsel.

b.    mail the Notice on or before **May 31, 2013** (the "Initial Notice Date") to all Class Members for whom the parties have addresses, using first class mail, and having first updated the addresses using the National Change of Address database;

c.    on or before **May 31, 2013**, post the Notice and the Agreement, along with other documents as agreed to by Plaintiffs' Lead Settlement Counsel and the NFL, on a website with the domain name "www.NFLRetireePublicitySettlement.com";

d.    complete publication of the summary notice attached to the Settlement Agreement by no later than **August 1, 2013** pursuant to the Notice Plan;

e.    process requests for exclusion from the Settlement in accordance with the terms of this Order;

f.    file with the Court proof of mailing of the Notice and proof of compliance with the Notice Plan submitted by Plaintiff's Lead Settlement Counsel by

**September 6, 2013**, along with a list of the persons and entities who have validly and timely requested exclusion from the Settlement Class; and

g.    establish and staff with representatives knowledgeable about the Settlement Agreement a toll-free telephone number and associated call-in service for responding to inquiries from Class Members about the Settlement Agreement and any issues relating to the case and operating the call-in service consistent with industry standards.

**H.    Declaration of Compliance**

By no later than **September 6, 2013**, Plaintiffs' Lead Settlement Counsel shall file with the Court a declaration of compliance with the notice requirements, including the notice requirements under the Class Action Fairness Act, 28 U.S.C. § 1715, after notice has been given following the terms of the Agreement and this Order.

**I.    Settlement Escrow Account**

Pursuant to Section II.B.2 of the Settlement Agreement, Plaintiffs' Lead Settlement Counsel shall establish a separate escrow fund that shall quality as a "qualified settlement fund" with the meaning of Treasury Regulation Section 1.468B-1 or any other relevant statutes, regulations or published rulings now or hereafter enacted or promulgated. Plaintiffs' Lead Settlement Counsel or his designee shall be the "administrator" of the Settlement Fund within the meaning of Treasury Regulation Section 1.468B-2(k)(3). Plaintiffs' Lead Settlement Counsel or his designee shall apply, or shall cause application to be made, to the Internal Revenue Service for an employer identification number on behalf of the Settlement Fund and shall further cause to be prepared on behalf of the Settlement Fund any and all required tax returns. Plaintiffs' Lead Settlement Counsel or his designee shall file such tax

17

returns with all appropriate tax authorities and shall cause any taxes shown due on such returns or otherwise and payable by the Settlement Fund to be paid to the United States Treasury or other taxing authority on behalf of the Settlement Fund from the funds on deposit in the Settlement Fund.  Plaintiffs' Lead Settlement Counsel or his designee shall do or cause to be done any and all other acts as may be reasonably required to cause the Settlement Fund to qualify and remain qualified as a "qualified settlement fund" as described above for all taxable years of the Settlement Escrow Account, beginning with the date of its establishment.

**J.     Final Approval Hearing**

A hearing (the "Final Approval Hearing") will be held by this Court in Courtroom 7D, 316 N. Robert Street, St. Paul, MN on **Thursday, September 19, 2013 at 10:00 a.m.** to (a) determine whether the Settlement should be finally approved as fair, reasonable, and adequate; (b) determine whether final judgment should be entered dismissing with prejudice all claims against Defendant pursuant to the Agreement; and (c) consider Settling Plaintiffs' Counsel's applications for attorneys' fees and expenses and Plaintiffs' Lead Counsel's requests for service awards for Settling Plaintiffs.

The Court will also consider any objections during the Final Approval Hearing. The Court may adjourn or continue the Final Approval Hearing without further notice to the Settlement Class. The Court may also approve the Settlement at or after the Final Approval Hearing with or without modification without further notice to the Settlement Class.

18

**K.**     **Preliminary Injunction**

All Class Members and their legally authorized representatives, unless and until they have timely and properly excluded themselves from the Settlement Class, are preliminarily enjoined from:

•       Filing, commencing, prosecuting, intervening in, or participating as plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to, or arising out of the Claims and causes of action, or the facts and circumstances at issue, in the case and/or the Released Claims;

•       Disseminating to members of the Settlement Class or publishing in any form or by any means, any materially false or misleading information regarding the terms of this Settlement or Settlement Agreement. Any such communication to members of the Settlement Class must be consistent with the notice approved by the Court and any person disseminating information inconsistent with the approved notice may be required to provide corrective notice.

**L.**     **Designation of Members of the Boards of Directors of the Common Good Entity and the Licensing Agency**

The Court, on application of Plaintiffs' Lead Settlement Counsel, hereby designates the following as the initial members of the Boards of Directors of the Common Good Entity and of the Licensing Agency:

James Nathaniel Brown
Irvin Acie Cross
Billy Joe Dupree
Ronald Mix
Darrell Thompson
Jack Youngblood
David Robinson

The names of these initial Directors will be set forth in the Notice.

**M.     Effect of Settlement Agreement**

Plaintiffs' Lead Settlement Counsel, on behalf of the Settlement Class, the Settling Plaintiffs and the NFL entered into the Settlement Agreement solely for the purpose of compromising and settling disputed claims.  Defendant has at all times denied, and continues to deny, any wrongful act or omission alleged in this case and any liability of any sort to any member of the Settlement Class.  The Settlement Agreement, the documents relating to the Settlement Agreement, or this Order are not, and should not in any event be, (a) construed, deemed, offered or received as evidence of a presumption, concession or admission on the part of any of the Settling Plaintiffs, Defendant, any member of the Settlement Class or any other person; or (b) offered or received as evidence of a presumption, concession or admission by any person of any liability, fault, wrongdoing or other dereliction of duty for any purpose in any judicial or administrative action or proceeding, whether in law or in equity.

If, for any reason, the Settlement Agreement does not become effective, Defendant's conditional withdrawal of its objections to the certification of a settlement class will be null and void in its entirety; this Order conditionally certifying a class for purposes of the Settlement will be vacated; all Plaintiffs and Defendant will return to their respective positions in this case as those positions existed immediately before the execution of the Settlement Agreement; any balance of funds left in the Settlement Escrow Account will be returned promptly to Defendant; and nothing stated in the Settlement Agreement or in this Order will be deemed an admission or waiver of any kind by any Plaintiffs or Defendant or used as evidence against, or over the objection of, any Plaintiffs or Defendant for any purpose in this case or in any other action or proceeding of any kind.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Plaintiffs' Motion for Preliminary Approval (Docket No. 259) is **GRANTED** as more fully set forth above.


Dated: <u>April 5, 2013</u>

<u>s/ Paul A. Magnuson</u>
Paul A. Magnuson
United States District Court Judge