UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

John Frederick Dryer, James Lawrence
Marshall, Joseph Michael Senser, Elvin
Lamont Bethea, Dante Anthony
Pastorini, Edward Alvin White, Fred
Barnett, Tracy Simien, Darrell
Alexander Thompson, Lemuel Joseph
Barney, James Nathaniel Brown, Mark
Gregory Clayton, Irvin Acie Cross,
Brian Duncan, Billy Joe Dupree,
Michael James Haynes, Paul James
Krause, Bruce Allan Laird, Reginald
McKenzie, Preston Pearson, Reginald
Joseph Rucker, Jackie Larue Smith, and
Jim Ray Smith, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

   v.

National Football League,

        Defendant.

Civil No. 09-2182 (PAM/AJB)


**PLAINTIFFS JAMES LAWRENCE
MARSHALL, JOSEPH MICHAEL
SENSER, AND DANTE
ANTHONY PASTORINI'S
RESPONSE IN OPPOSITION TO
MOTION FOR FINAL
APPROVAL OF SETTLEMENT**

---

Plaintiffs James Lawrence Marshall, Joseph Michael Senser, and Dante

Anthony Pastorini (the "Objecting Plaintiffs") hereby file, pursuant to D. Minn.

LR 7.1(c)(6)(C), their response in opposition to the Settling Plaintiffs' motion for

final approval of the proposed settlement (Dkt. #405.)

The Settling Plaintiffs have not carried their burden to demonstrate that the proposed settlement is fair, reasonable, and adequate. Multiple independent legal and evidentiary failures in the Settling Plaintiffs' submission require denial of final approval:

- No evidence before the Court demonstrates or even suggests the potential value of the class members' past and future claims that will be released by the settlement.

- No evidence before the Court identifies defined benefits that will be provided to individual class members by the Common Good Fund.

- No evidence before the Court suggests that the Common Good Fund distributions will benefit any, let alone all, class members.

- No evidence before the Court suggests that the Licensing Agency will produce any revenue streams for class members.

- All cited authority denies approval of settlements that distribute funds solely to third parties instead of class members where distributions to class members could be made.

- No cited authority approves a settlement that does not guarantee a defined economic benefit to eligible class members.

The Settling Plaintiffs' motion for final approval makes clear that evidence and law sufficient to establish fairness of the proposed settlement do not exist in the record. The Objecting Plaintiffs therefore oppose the motion for final approval and request that it be denied.

## ARGUMENT

Under Federal Rule of Civil Procedure 23(e), the Court acts as a fiduciary who must serve as a guardian of the rights of absent class members. The Court cannot accept a settlement that the proponents have not shown to be fair, reasonable, and adequate. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). Accordingly, it is the Settling Plaintiffs' burden to demonstrate that the proposed settlement is fair. Absent that showing, the Court must deny final approval.  The Settling Plaintiffs have not satisfied their burden.

## I.    The Record Contains No Evidence of the Value of the Released Claims.

The Settling Plaintiffs have come forward with no evidence regarding the potential value of class members' claims. Although Plaintiffs' Lead Settlement Counsel ("PLSC") suggests that it had access to adequate financial information during negotiations, (Dkt. #407 at 3, 32), none of this information has been submitted to the Court. PLSC refers to a "statistically representative sampling" of "documents related to marketing" and "agreements involving the NFL as licensor or licensee of . . . footage of retired players," and it asserts that "[t]he NFL also supplied further financial information." (*Id.* at 31-32.) But no actual documents or evidence are cited and none have been provided. The record contains nothing allowing a comparison between the potential value of the released past and future claims and the amount offered in settlement.

3

The Court, therefore, cannot evaluate the merits of the class members' claims because PLSC has not provided the Court with the necessary evidence. In assessing the adequacy of settlement, "the most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in the settlement." *Grunin*, 513 F.2d at 124. The merits of the class members' case are inextricably linked to the value of their claims—the amount offered in settlement should be weighed against the value of the claims in tandem with the chances of establishing the legal elements of the claims.

If value is ignored, as PLSC urges, a court could not differentiate between claims having equal chances of success but radically different values. Under PLSC's flawed analysis, a claim worth $10,000 and a 50% chance of success would have the same "merits" as a claim worth $10 million and a 50% chance of success. *Grunin* therefore did not apply the reasoning that PLSC urges. In response to the objectors' arguments of insufficient damages discovery, the *Grunin* court examined the record and determined that the district court had the benefit of "an immense repository of evidence" and "every relevant fact was before the court." *Id.* at 125 (emphasis added). In contrast to an immense repository of evidence, here there is nothing but PLSC's unsupported assertion of adequate damages-related documents. This is not enough and this Court should

not approve the settlement based on mere attorney argument without

supporting evidence.

Further, *Grunin* extensively cites and relies on *City of Detroit v. Grinnell

Corp.*, 495 F.2d 448 (2d Cir. 1974). The *Grinnell* factors, which have been cited by

this Court, *Alexander v. Nat'l Football League*, Civil No. 4-76-123, 1977 U.S. Dist.

LEXIS 14685, at *35-36 (D. Minn. Aug. 1, 1977), include evaluation of the class

members' best possible recovery. PLSC's request that the Court ignore this

consideration therefore should be rejected.

The Court's evaluation of the fairness of the settlement would benefit from

allowing additional, limited discovery relating to damages beyond the narrow

economic discovery previously ordered by the Court for class certification

purposes. (Dkt. #65 at 9-10.) The discovery referenced in (but not provided with)

PLSC's motion does not relate in any way to the potential value of the future

claims released by the settlement. For example, discovery into the NFL's

insurance of its game footage library may help determine the expected value to

the NFL of future use of retired players' game footage. (*See* Degen Decl. ¶ 40,

Dkt. #329.[1]) The Objecting Plaintiffs previously requested from PLSC any

information demonstrating the value of the released claims, (Dkt. #328 at

---

[1] PLSC has challenged Mr. Degen's declaration only with argument and has not
provided any economic evidence in response.

Exs. A-B), but PLSC has not provided that information to the Objecting Plaintiffs

(Dkt. #328 at Ex. C) or to the Court.  The Objecting Plaintiffs therefore request

that, if the Court does not deny final approval outright, it allow the Objecting

Plaintiffs to submit for the Court's approval proposed limited damages

discovery relating to the value of the released claims.

## II.     The Record Contains No Evidence of a Benefit Guaranteed to Any Class Member, and No Cited Authority Allows the Proposed Payments Exclusively to Third Parties.

PLSC has not explained one defined benefit that any individual class

member will receive because there is no evidence that any class member will

receive any benefit at all. PLSC also has not submitted any evidence that the

Licensing Agency will generate revenue at any point or which class members

might expect revenue from the Licensing Agency. The NFL's contributions to

create the Licensing Agency and provide it with in-kind support are again

payments only to a third party and do not provide economic benefits to

individual class members. With no evidence of record that any class member will

receive an economic benefit, the Court should not approve the settlement.

Further, PLSC has not cited a single case supporting a settlement structure

such as this one, whereas the Objecting Plaintiffs cited myriad cases establishing

that settlement funds may go to third parties only when circumstances prevent

direct distribution to class members. (Dkt. #327-1 at 12-16.) PLSC admits that the

settlement funds will only be distributed to third parties, (Dkt. #407 at 5), and this alone compels rejection of the proposed settlement.

Class settlements should compensate individual class members for releasing their individual claims, and the proposed settlement in this case is unfair because it does not achieve this basic objective. Two recent proposed class settlements provide a stark contrast to the absence of compensation proposed in this case.

The first example resolves the various concussion lawsuits filed against the NFL (the "concussion litigation"). On August 29, 2013, the mediator in the concussion litigation announced that those parties had reached a settlement. The proposed settlement in the concussion litigation contains several hallmarks that are typical in class action settlements and highlight the deficiencies in the settlement proposed here.

The proposed concussion litigation settlement provides, for example:

- $75 million to fund medical examinations to determine whether class members have a compensable claim;

- At least $675 million to compensate individual class members for their injuries;

- A claims process to determine which players have compensable claims and to compensate those players directly; and

- $10 million to fund medical, safety, and injury-prevention research and education.[2]

Therefore, it appears that in the concussion litigation settlement:

- Qualifying class members will receive direct payments;

- Class members may submit claims for compensation to a settlement administrator;

- The settlement will cover the costs of determining whether class members have compensable claims; and

- Only 1.3% of settlement funds—$10 million out of $765 million—will go to third-party organizations for the indirect benefit of the class.

In contrast, in the proposed settlement here:

- Class members cannot receive direct payments;

- Class members cannot submit claims to an administrator;

- The settlement disposes of all class members' past and future claims without guaranteed compensation; and

- All settlement funds go to third-party organizations.

---

[2] The parties to the concussion litigation have not yet filed a proposed settlement agreement, but these terms come from a press release and key terms of the settlement issued by the mediator, former U.S. District Judge Layn R. Phillips, *available at* http://www.prnewswire.com/news-releases/nfl-retired-players-resolve-concussion-litigation-court-appointed-mediator-hails-historic-agreement-221683861.html (last accessed Oct. 11, 2013) and http://www.irell.com/assets/attachments/Principal%20Terms%20of%20NFL%20Litigation%20Settlement.pdf (last accessed Oct. 11, 2013).

The second example is a publicity rights case similar to this one. Electronic Arts, Inc. was sued over its unapproved use of students' likenesses and physical descriptions in the company's popular "NCAA Football" and "NCAA Basketball" video games.[3] EA agreed to settle the claims and change the way it develops future games featuring NCAA athletes to protect the rights to their likenesses. It appears that EA has agreed to pay the individual student athletes for the use of their likenesses. The proposed settlement in this case, in contrast, provides no payments to class members and the NFL is not required to modify the way it uses class members' likenesses—instead, it obtains a future release of claims relating to a wide variety of potential uses.

The Objecting Plaintiffs express no opinion regarding the fairness or adequacy of the proposed settlements discussed above, but by contrast they highlight the obvious deficiencies in the settlement currently before the Court.

## CONCLUSION

The Settling Plaintiffs have not met their burden of demonstrating that the proposed settlement is fair and adequate. The settlement structure does not ensure that any class member will receive any economic benefit, and instead

[3] The Lanier Law Firm Announces Historic Settlement for NCAA Student-Athletes in Lawsuits Against EA Sports, Collegiate Licensing Company, *available at* http://www.lanierlawfirm.com/law_firm_news/the-lanier-law-firm-announces-historic-settlement-for-ncaa-student-athletes-in-lawsuits-against-ea-sports-clc.htm (last accessed Oct. 11, 2013).

distributes all funds to third parties. Further, PLSC has submitted no evidence that allows the Court to evaluate the potential value of class members' past or future claims.

For the reasons set forth above and in the Objecting Plaintiffs' objections, the Objecting Plaintiffs respectfully request that the Court deny approval of the settlement.


Dated:  October 11, 2013            ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


By:  *s/Michael V. Ciresi*

Michael V. Ciresi (MN Bar No. 16949)
Jan M. Conlin (MN Bar No. 192697)
Thomas C. Mahlum (MN Bar No. 259391)
Aaron R. Fahrenkrog (MN Bar No. 386673)
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Phone:  (612) 349-8500
Fax:  (612) 339-8141
MVCiresi@rkmc.com
JMConlin@rkmc.com
TCMahlum@rkmc.com
ARFahrenkrog@rkmc.com

Robert A. Stein (MN Bar No. 104930)
BOB STEIN LLC
10125 Crosstown Circle, #200
Eden Prairie, MN 55344
Phone:  (952) 829-1043
Fax:  (952) 829-1040
rastein66@aol.com

Thomas J. Ward
WARD & WARD, P.L.L.C.
2020 N Street, N.W.
Washington, D.C. 20036
Phone:  (202) 331-8160
Fax:  (202) 503-1455
tom@wardlawdc.com

**Attorneys for Plaintiffs**
**James Lawrence Marshall,**
**Joseph Michael Senser,**
**and Dante Anthony Pastorini**