UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| DRYER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE,<br><br>    Defendant. | Civil No. 09-2182 (PAM/AJB)<br><br>***CULP* ACTION PLAINTIFFS' LIMITED RESPONSE IN OPPOSITION TO PLAINTIFFS' LEAD SETTLEMENT COUNSEL'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND CLASS CERTIFICATION**<br><br>Date:     October 17, 2013<br>Time:    2:00 p.m.<br>Judge:   Hon. Paul A. Magnuson<br>Courthouse: St. Paul, Courtroom 7D<br><br>**ORAL ARGUMENT REQUESTED** |

TO: THE HONORABLE COURT AND ALL PARTIES OF RECORD

   Opt-out plaintiffs Curley Culp, John Riggins, Ron Yary, Dave Casper, Thomas Mack, Phil Villapiano, Roman Gabriel, Jr., Willie Buchanon, Joe Kapp, and Mike Bass (the "*Culp* Action Plaintiffs), the plaintiffs that initiated an action in federal court in the

1

District of New Jersey on August 20, 2013 captioned *Culp, et al. v. NFL Productions LLC, et al.*, Civil Case No. 1:13-cv-04999-JEI-KMW (the "*Culp* Action"), hereby respectfully submit this limited response to "Settling Plaintiffs' Motion for Final Approval of Settlement and Class Certification"[1]  For the reasons stated herein, the *Culp* Action Plaintiffs respectfully request that the Court deny PLSC's Motion to the extent that it requests this Court to extend the injunction preventing litigation by any opt-out plaintiffs, including the *Culp* Action Plaintiffs.

I.      **INTRODUCTION.**

It is time, finally, to let the opt-outs go their own way and litigate their cases.  The NFL's proposed class action settlement has proven to be unpalatable to a wide swath of former NFL players.  More than 2,000 former players have definitively opted out of this matter.  As the Court is well aware, hundreds of them had already initiated their own litigation prior to being enjoined by this Court at the request of the NFL and Plaintiffs' Lead Settlement Counsel.  *See,* Dkt. 380.[2]  Now, PLSC, with the support of the NFL, urges this Court to truly enter extraordinary, unprecedented territory.  Specifically, PLSC requests this Court to extend an injunction barring opt-out litigation until "30 days after the Eighth Circuit has decided any appeal [from any order from this Court granting final approval to the proposed settlement] and the time for review of that decision has expired."  PLSC Motion, at 42.  There is no absolutely no reason for this Court to commit

---

[1] For ease of reference, all citations herein to the "PLSC Motion" or "PLSC Mot." are to the "Memorandum of Law in Support of Settling Plaintiffs' Motion for Final Approval of Settlement and Class Certification" (Dkt. 407).

[2] The *Culp* Action Plaintiffs have initiated an appeal in the United States Court of Appeals for the Eighth Circuit regarding this matter.

reversible error by adopting PLSC's request.

PLSC's request has no support whatsoever in Fed. R. Civ. Proc. 23 ("Rule 23"), the detailed procedural rule governing the litigation and settlement of federal class actions. Instead, for support, PLSC cites only one, unpublished district court case, the *Zurn* case, that does not even contain the quoted language that PLSC claims. Moreover, that case is a plain-vanilla order granting final approval to a class action settlement, like thousands of others that have been entered. There was absolutely no issue raised or referenced regarding any attempt to extend an injunction.

In contrast, numerous cases have held that a federal trial court loses its jurisdiction when a matter is on appeal following a final judgment (as well as even during many types of interlocutory appeals). PLSC, nonetheless, would have this court disregard the fundamental structure and organization of the federal court system. Moreover, PLSC's request would impermissibly keep thousands of litigants around the country from exercising their fundamental rights to seek redress for their claims in a federal or state court, on the timetable that suits their needs, with the counsel of their own choosing. If granted, PLSC's requested relief would constitute a dramatic overreach of federal court powers, raising significant constitutional concerns. It would in fact constitute a completely new, and incorrect, understanding of a federal trial court's powers, after a final judgment, over individuals all over the country. There is no support for this in Rule 23, in any statute, nor in any caselaw.

The opt-outs cannot be kept in a state of limbo, for what may amount to several years, while they wait to exercise their rights. This is a significant issue, particularly in

this case.  PLSC whisks away such concerns by stating that its requested relief "cannot prejudice any party because all parties have conceded that the limitations periods for the enjoined claims will be tolled for the duration of the stay."  PLSC Mot., at 41.  PLSC ignores the well-accepted principle that "justice delayed is justice denied."  *See, e.g., Jones v. Clinton,* 72 F.3d 1354, 1363 (8th Cir. 1996) (Beam, J., concurring) ("Aside from the adage that justice delayed is justice denied, Ms. Jones faces real dangers of loss of evidence through the unforeseeable calamities inevitable with the passage of time."); *SEC v. First Am. Bank & Trust Co.*, 481 F.2d 673, 675 n. 3 (8th Cir.1973) ("[J]ustice delayed is justice denied."); *Fitzpatrick v. Hennepin County*, 2010 WL 1626906, * 4 ((D. Minn. April 21, 2010) (*id.*).

     PLSC ignores the well-documented fact that numerous NFL players presently suffer from, or will suffer from, severe cognitive difficulties brought about by their service for NFL member teams.  Just this month, the documentary and book titled *League of Denial* were released to widespread attention, documenting the severity of this epidemic and the NFL's active role in covering it up.[3]  Opt-outs cannot be forced to wait, while many of their mental functions deteriorate, further limiting their ability to litigate their cases and be actively involved in that process.

     Moreover, during the pendency of this case, key NFL witnesses have already died, as well as announced that they were leaving the employ of the NFL.  For example, NFL Films co-founder and President Steve Sabol died during this case without having been

---

[3] *See, e.g., http://www.pbs.org/wgbh/pages/frontline/league-of-denial/* (last visited Oct. 14, 2013) (documentary available for viewing).

deposed.[4]  He is referenced in PLSC's Motion.  *See*  PLSC Motion, at 18.  Additionally, NFL Network President Steve Bornstein announced that he is leaving the NFL.[5]  The *Culp* Plaintiffs' Complaint extensively discusses the NFL Network, and NFL Films' being, as the NFL puts it, the "backbone" of the NFL Network.  Moreover, the NFL's Gary Gertzog, repeatedly referenced in the *Culp* Complaint, recently announced that he too is leaving the NFL.[6]

Moreover, the *Culp* Action Plaintiffs note that PLSC in its Motion calls into question, in significant detail, the prospects for success of *any* case, anywhere, by any former NFL player, relating to the subject matter covered by the settlement.  Moreover, it appears that material under seal, and incomplete material to say the least, was publicly-utilized in that process.  It is particularly disheartening that this is occurring by lawyers for former NFL players, in detail far greater than normally seen in class actions cases.  It further puts a premium on the timely need for opt-out plaintiffs to be free to zealously litigate their own cases, to allow other voices to be heard and to litigate all relevant issues.  Those voices and speech should not continue to be interminably muted.

Finally, the *Culp* Plaintiffs note that PLSC's requested relief was never referenced in the Court's initial order granting preliminary approval to the settlement, nor in the Court-approved initial notice to settlement class members, nor in the Court-approved

---

[4] *http://www.nytimes.com/2012/09/19/sports/football/steve-sabol-creative-force-behind-nfl-films-dies-at-69.html?pagewanted=all* (last visited October 14, 2013).
[5] *See, e.g., http://www.nytimes.com/2013/07/31/sports/football/nfl-television-pioneer-to-step-down-next-year.html?_r=0* (last visited Oct. 14, 2013)
[6] *http://www.sportsbusinessdaily.com/Daily/Issues/2013/09/11/People-and-Pop-Culture/NFL-exec.aspx* (last visited Oct. 14, 2013).

supplemental notice to class members, nor in the Court's order enjoining the pendency of related proceedings until it enters final judgment. PLSC's requested relief would now deprive thousands of individuals of due process and the ability to timely and zealously pursue their claims, without notice ever having been provided to them regarding this possibility. And PLSC would ask the Court to do this based on a few skeletal (and incorrect) paragraphs, buried at the tail end of a very recently-filed brief more than 40 pages long. Those affected individuals thus never had the opportunity to come and address this issue, with counsel of their own choosing, depriving them of due process on this issue. That notice defect alone would constitute reversible error.

## II.   ARGUMENT

### A. PLSC's Sole Cited Case is Inapplicable.

PLSC has not met its burden to demonstrate that the injunction should be extended. PLSC cites just one case for support for PLSC's proposition that "[t]here is no question as to the Court's authority to maintain the injunction in place throughout the appeals process." PLSC Mot., at 41. Specifically, PLSC cites as support *In re: Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, *10 (D. Minn. February 27, 2013) ("*Zurn*"). Here is the entirety of what PLSC states about *Zurn*:

- "(ordering that the injunction would remain in place until 'thirty (30) days after the date final judgment is issued in this matter,' which the court's order defined as 'the later of: (i) all periods within which to file an appeal from the Final Orders and Judgments has expired without the filing of any appeal, or (ii) in the event that an appeal from the Final Order and Judgment is filed, a final order has been entered disposing of the appeal, and any time for seeking leave to appeal or time for further appeal has expired')" (Br., at 41-42).

PLSC actively misstates the contents of *Zurn* and its applicability here.  As an initial note, **none of this quote that PLSC states is in *Zurn* appears in *Zurn***:  "the later of:  (i) all period within which to file an appeal from the Final Orders and Judgments has expired without the filing of any appeal from the Final Order and Judgment is filed, a final order has been entered disposing of the appeal, and any time for seeking leave to appeal or time for further appeal has expired."  To reiterate, **this language does not appear in *Zurn*.**

*Zurn* actually is a plain-vanilla order granting final approval to a class action settlement, indistinguishable in all relevant respects from thousands of orders that have been entered granting final approval to a class action settlement.  In *Zurn*, the court noted that there appeared to be "hundreds of thousands" of class members (*Zurn*, at *1), "no objections were received" (*id.*, at *2), and "[o]nly 53 requests for exclusion were received."  *Id.*

The court in *Zurn* in fact stated that "[t]he vast majority of class members have not expressed interest in individually prosecuting separate actions.  *Because this is an opt-out settlement, those who wish to pursue their own claims are free to do so*."  *Id.*, at *5 (emphasis added).

The court further stated the following:

- "11.   The injunction issued in the Court's Order Granting Motion to Certify Class for Settlement Purposes and for Preliminary Approval of Class Action Settlement and Form and Dissemination of Notice to the Class [Docket No. 219] shall be **LIFTED** thirty (30) days after the date final judgment is issued in this matter;" (*id.*, at *10) (emphasis in original).

7

- "12.   Class members who did *not* file a timely and valid *exclusion are enjoined* from filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction based on or relating to their F1807 Fittings, the claims and causes of action, or the facts and circumstances relating thereto, in this proceeding, or the Settlement Agreement except for claims reserved or not released in the Settlement Agreement" (*id.*, at *11) (emphasis added)

- "16.   Without affecting the finality of this Order, the Court retains *continuing and exclusive jurisdiction* over this case and the parties, including all owners of plumbing systems with F1807 Fittings and their representatives *who did not file a timely and valid request for exclusion* from this settlement, concerning the administration, consummation, claim procedures, and enforcement of the settlement and the benefits to the class members thereunder;" (*id.*, at *11 (emphasis added).

- The Court's Order ends by stating "LET JUDGMENT BE ENTERED ACCORDINGLY."

There is no indication whatsoever in Zurn that there was any issue about any party contending that an injunction should be extended.  As noted above, the critical language that PLSC states is a quote from *Zurn* **does not appear in that opinion.**  Moreover, a review of the *Zurn* docket indicates that, the very day that the Court issued the Order discussed above, the Court further entered a final "Judgment in a Civil Case."  *See* Case No. 08-MDL-1958 ADM/AJB, Dkt. No. 256.

PLSC argues that absent an extension of the injunction, "Plaintiffs will scramble to push forward with litigation during the appeal, creating the risk of inconsistent rulings." PLSC Motion, at 41.  PLSC does not offer anything in support of this statement, including any examples.  In fact, this Court has only two substantive rulings in this matter, one very early order denying the NFL's motion for judgment on the

pleadings (Dkt. No. 35, entered Jan. 28, 2010), and one denying the NFL's motion for partial summary judgment (Dkt. No. 247, entered Dec. 11, 2012). No "inconsistent rulings" could occur that would have any impact on a class-settlement on appeal in which the opt-out plaintiffs are not parties. If, in new litigation brought by opt-outs, a court eventually made the same rulings, there would be no inconsistency. Additionally, it appears extremely unlikely that in new litigation a court would even reach a summary judgment, and rule in favor of the NFL, before any appellate decision is issued on the class settlement. And if, in new litigation, a court *granted* either of the NFL's motions were they to eventually bring them, there still would be no inconsistency that would affect the settlement approval process.

Next, PLSC offers that "[m]ore troubling, should the Eighth Circuit not affirm the approval and remand for further class proceedings in this Court, the absence of a stay will have allowed duplicating, competing litigation, to the detriments of the courts and parties alike." PLSC Mot., at 41. PLSC continues that "[e]ntering a stay, by contrast, cannot prejudice any party because all parties have conceded that the limitations periods for the enjoined claims will be tolled for the duration of the stay." *Id.*

Neither of these contentions holds any water. First, PLSC's scenario is entirely speculative. This court has not entered any order regarding final approval, and obviously no appeal has been filed. PLSC then asks this Court to envision a reversal of any final approval order, something that, in the Court's view, would appear to be seemingly at odds with the Court's exceptionally strong language in its Order granting preliminary approval to the settlement. *See* Dkt. No. 270 "Mem. and Order." Then,

9

PLSC asks this court to envision "duplicating and competing litigation, to the detriments of the court and parties alike." PLSC Mot., at 41. Again, PLSC offers no specifics at all on what this means. And as discussed above, PLSC's brief statement about the statute of limitations does not save its argument. PLSC demonstrates no possibility of any harm, let alone irreparable harm. PLSC does not meet its burden.

### B. This Court will Not Have Jurisdiction After it Enters a Final Judgment

Numerous courts, including the Supreme Court and the Eighth Circuit, have repeatedly addressed and rejected the notion that a trial court retains jurisdiction after it enters a final judgment and that judgment is appealed. If necessary, an appellate court is more than capable of addressing any issues that *it* believes will impact its consideration of the matter. That is entirely outside of the purview of the trial court. *See, e.g., Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379 (U.S. 1985) ("In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal."); *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, (U.S. 1982) ("Even before 1979, it was generally understood that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance-it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *In re Fisette*, 695 F.3d 803, 806 (8th Cir. 2012) ("The general rule is that the filing of a notice of appeal 'confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved

in the appeal.'"). This is especially so when a final judgment is entered. *See, e.g., U.S. v. Cheely*, 814 F.Supp. 1430, 1434 (D. Alaska 1992) ("Generally, when an appeal is taken from a final judgment in a federal civil case, and by reasonable extension in a criminal case, jurisdiction over the case is transferred to the appellate court and the trial court loses jurisdiction over the case. [citing *Griggs*]. A final judgment is one that disposes of all the issues in a case and brings it to an end."

PLSC's request to extend the injunction is entirely at odds with the jurisprudence regarding trial court and appellate jurisdiction. It is no wonder, then, that PLSC could not locate any authority countenancing the extraordinary request that it makes to this Court. It has not, and cannot, meet its burden. PLSC and the NFL's overreach here to control independent litigants should be rejected. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) ("The right to participate, or to opt-out, is an individual one and should not be made by the class representative or the class counsel. *See Newberg and Conte, Newberg on Class Actions*, § 16.16 at 90 (3d ed. 1992) ("The decision to exercise the right of exclusion in a Rule 23(b)(3) action is an individual decision of each class member and may not be usurped by the class representative or class counsel.").").

### III. CONCLUSION

For the reasons stated herein, the *Culp* Action Plaintiffs respectfully request that the Court deny PLSC's Motion to the extent that it seeks to extend the injunction past the time that this Court enters any final order and judgment approving the class action settlement. The *Culp* Action Plaintiffs additionally request an opportunity to be heard on

this matter at the upcoming hearing on PLSC's motion for final approval of the class action settlement.

Dated:  October 14, 2013 Respectfully Submitted,

**/s/ Robert A. Stein**
BOB STEIN LLC
Robert A. Stein MN 104930
6473 Beach Road
Eden Prairie, MN 55344
Telephone: (952) 829-1043
Facsimile: (952) 829-1040
Email: rastein66@aol.com

**/s Jon T. King**

HAGENS BERMAN SOBOL SHAPIRO LLP
Jon T. King (Cal. Bar. 205073)
715 Hearst Ave., Suite 202
Berkeley, CA 94710
Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
Email:  jonk@hbsslaw.com

*Counsel for Culp Action Plaintiffs*

## **L.R. 7.1(f) WORD COUNT COMPLIANCE CERTIFICATE**

I, Bob Stein, certify that the foregoing complies with Local Rule 7.1(f).

I further certify that, in preparation of this Response, I used Word's word count, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count.

I further certify that the above referenced Response contains 3,137 words.

Dated: October 14, 2013               Respectfully Submitted,

/s/ Robert A. Stein

BOB STEIN LLC
Robert A. Stein MN 104930
6473 Beach Road
Eden Prairie, MN 55344
Telephone: (952) 829-1043
Facsimile: (952) 829-1040
Email: rastein66@aol.com

*Counsel for Culp Action Plaintiffs*