# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

John Fredrick Dryer,
Elvin Lamont Bethea, and              No. 0:09-cv-02182 PAM/AJB
Edward Alvin White,

                    Plaintiffs,       **ORDER GRANTING IN PART,
                                      DENYING IN PART,
                                      PLAINTIFFS' MOTION TO
v.                                    COMPEL DEFENDANT TO
                                      PRODUCE DOCUMENTS
National Football League,             AND ANSWER
                                      INTERROGATORIES**

                    Defendant.
_____

Jeffrey S. Gleason, Thomas C. Mahlum, Matthew R. Korte, Robins, Kaplan, Miller & Ciresi, LLP, 2800 Lasalle Plaza, 800 Lasalle Avenue, Minneapolis, MN 55403-2015; Robert A. Stein, Bob Stein LLC, 10125 Crosstown Circle, #200, Eden Prairie, MN 55344, for Plaintiffs Dryer *et al.*

Aaron D. Van Oort, Daniel J. Connolly, and Eileen M. Hunter, Faegre Baker Daniels, LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, for Defendant National Football League.
_____

      This matter is before Special Master Arthur J. Boylan on Plaintiffs' Motion to Compel Defendant to Produce Documents and Answer Interrogatories, after hearing on August 19, 2014. Plaintiffs seek the following: 1) production of documents containing subscriber fee revenues paid to the NFL Network; 2) production of information used by the NFL to value NFL owned content in NFL films; 3) production of unredacted documents containing information about the

NFL's uses of Plaintiffs' likenesses; 4) production of documents concerning downloads of films containing Plaintiffs' likenesses on NFL.com from 2003 to 2007, and iTunes from 2003 to present; 5) discovery of information concerning the elements considered by the NFL in determining licensing fees for NFL films, and any use of the films at issue in the NFL Now platform; and 6) full and complete narrative responses to Interrogatories 14, 17 and 20.

Based upon the record, memoranda, and oral arguments by counsel, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Defendant to Produce Documents and Answer Interrogatories is **GRANTED IN PART**, and **DENIED IN PART**, as follows:

1. Discovery of subscriber fee revenues paid to the NFL Network is denied;

2. The NFL must produce data, to the extent the data reflects the value of comparable uses of Plaintiffs' likenesses in the past or the amount of the fee that is directly attributable to uses of Plaintiffs' likenesses, from the internal analysis performed by the NFL Network, referred to in the Katz Deposition Exhibit 415, to calculate a pro forma rights fee that an unrelated third party would pay the NFL for the right to use NFL owned content;

3. After *in camera* review of a sampling of redacted documents, the NFL need not produce unredacted versions of documents produced to Plaintiffs.

4. The NFL must request that Cinedigm provide documents showing the number of iTunes downloads of programs the NFL identified as containing Plaintiffs' likenesses and produce those documents, but the NFL need not make such a request to CBS Sportsline.

5. The NFL must produce documents showing any use of films containing Plaintiffs' likenesses used in beta testing for NFL Now, and films otherwise used or accessed after launch of NFL Now but before the

close of discovery in this matter, and the NFL need not produce Mr. Katz for continued deposition.

6. The NFL need not provide further response to Interrogs. 14, 17 and 20.

Dated: September 12, 2014         *s/ Arthur J. Boylan*
                                  Arthur J. Boylan
                                  Special Master

## MEMORANDUM

## I.    Background

Plaintiffs, Dryer, Bethea and White, who opted out of a class action settlement in this matter, are three retired NFL football players who allege the NFL used film footage containing their likenesses, from August 2003 to the present, without their permission and without compensation.  The discovery period has ended, and this is Plaintiffs' final discovery motion regarding damages.  The present dispute implicates several of the Court's prior rulings on discovery.

## II.   Legal Standard

Discovery, under Federal Rule of Civil Procedure 26(b)(1), is limited to information reasonably calculated to lead to the discovery of admissible evidence.  A court may order production of relevant information under this standard upon a showing of good cause.  Fed. R. Civ. P. 26(b)(1), 37(a)(1), (a)(3)(b).

By order dated April 3, 2014 (Dkt. 510) and adopted by Judge Magnuson on

May 6, 2014 (Dkt. 525), the Court set forth the relevant measure of damages in

this matter:

> Two measures of damages for an unlawful use of intellectual property include the value plaintiff received for comparable uses in the past, or alternatively, the amount of defendant's profits directly attributable to the uses. *See e.g., Brown v. Ames*, 201 F.3d 654, 662 (5th Cir. 2000); *Ventura v. Titan Sports Inc.*, 65 F.3d 725, 734 (8th Cir. 1995); *Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F.Supp.2d 1089, 1103 (D. Ariz. 2006). Profits are "directly attributable" to uses when there is causation−for example, when a plaintiff can prove that the use of its intellectual property motivated consumers to select or pay more for, the defendant's goods. *See, Gucci Am. Inc. v. Daffy's Inc.*, 354 F.3d 228, 242 (3rd Cir. 2003). When a plaintiff cannot connect the use to the profits, damages based on profits are too speculative. *Id.; see also Del Amo v. Baccash*, Civ. No. 07-663, 2008 WL 2780978, *2 (C.D. Cal. July 15, 2008).

III.   **Discussion**

   **A. The NFL need not produce information concerning subscriber fee revenues paid to the NFL Network.**

Plaintiffs seek to compel the production of the aggregate data of subscriber

fee revenues paid to the NFL Network for the right to use its programming,

including the films and footage containing Plaintiffs' likenesses.  Plaintiffs assert

the information is discoverable because the NFL represented that it does not

apportion subscriber fees on a film-by-film basis, therefore, Plaintiffs are entitled

to discovery of all subscriber fees to allow them to calculate the portion of the

revenue attributable to the individual programs in which Plaintiffs appeared.

Plaintiffs have not established that use of their individual likenesses motivated the subscribers to select or pay more for NFL Network programming. Under the law of the case, without such a showing, a theory of damages based on total profits is too speculative.  Thus, the total of subscriber fee revenues paid to the NFL Network for use of its films is not discoverable.

**B. The NFL must produce data, if any, that reflects the value of comparable uses of Plaintiffs' likenesses in the past or the amount of the fee that is directly attributable to uses of Plaintiffs' likenesses, from the internal analysis performed by the NFL Network to calculate "a pro forma rights fee that an unrelated third party would pay the NFL for the right to use NFL owned content" (Katz Depo. Ex. 415 at 7).**

Plaintiff seek production of "the data used to prepare Plaintiffs' Deposition Exhibit No. 415**,** including the 'internal analysis performed by the NFL Network' that was relied upon, in part, by the third party company to calculate 'a pro forma rights fee, which represents a fee that an unrelated third-party licensee would pay the NFL for the right to use NFL-owned content.'"  (Pls' Mot. and Mem. to Compel Def. to Produce Documents and Answer Interrogs. at 6 (citing Ex. 4 at 7)).  Plaintiffs assert the information is discoverable because it reflects what a third party might have paid to license the footage at issue in an arms-length transaction. Plaintiffs seek to show they are entitled to greater damages than the value of their licensing agreements, which were not the product of arms-length negotiation.

The NFL provided, for *in camera* review, an unredacted copy of Katz Depo. Exhibit 415, a valuation analysis of the NFL Network as of March 31,

2008.   Based on the *in camera* review, neither the redactions made to the valuation nor, in general, the data used to prepare Katz Exhibit 415 are discoverable.   Within the valuation, however, there is reference to an internal analysis performed by the NFL Network to calculate a pro forma rights fee that an unrelated third-party licensee would pay the NFL for the right to use NFL-owned content.   The amount of the pro forma rights fee is not discoverable because the amount of the total value apportioned to Plaintiffs is too speculative, the same reason the Court denied discovery of the value of the NFL Films library. (Dkt 510 at 11).   If, however, the internal analysis performed by the NFL Network to determine the pro forma rights fee reflects the value of comparable uses of Plaintiffs' likenesses in the past or the amount of the total fee that is directly attributable to uses of Plaintiffs' likenesses, such information must be produced in conformance with the Court's prior discovery rulings.

## C. After *in camera* review of a sampling of redacted documents, the NFL need not produce unredacted versions of otherwise discoverable documents.

Plaintiffs contend the NFL improperly redacted information from documents containing relevant and discoverable information about the NFL's use of Plaintiffs' likenesses.   The NFL argues, under the Court's prior rulings, the NFL need not produce unredacted versions of documents that contain information regarding uses of other players' likenesses or information about the NFL brand as a whole.   The NFL has produced a sampling of the unredacted versions of documents for *in camera* review.   Upon review, the documents at issue were

properly redacted in conformance with the Court's prior discovery rulings.  (Dkts. 510 and 537).

**D. The NFL must request that Cinedigm produce documents showing the number of iTunes downloads of programs the NFL identified as containing Plaintiffs' likenesses, but the NFL need not produce documents showing the number of CBS Sportsline downloads of programs the NFL identified as containing Plaintiffs' likenesses.**

Plaintiffs seek production of documents concerning downloads of Plaintiffs' films from iTunes and CBS Sportsline.  The NFL asserts any relevant documents concerning iTunes downloads are in the control of Cinedigm.  The NFL offered, as a compromise, to ask Cinedigm if it has data or reports sufficient to show the number of iTunes downloads of the programs the NFL has identified as including game footage of Plaintiffs and whether Cinedigm can retrieve that data, and if so, the NFL will produce those documents.  (NFL's Mem. Opposing Pls' Mot. to Compel at 12, n.2).  Thus, the NFL is directed to make the request to Cinedigm and is ordered to produce any such documents provided by Cinedigm.

Regarding downloads of the films at issue from CBS Sportsline, the NFL has established that it does not have possession, custody or control over such documents; therefore, it is not required to produce the documents.  Fed. R. Civ. P. 34(a)(1)(A).  Plaintiffs had the opportunity to obtain this information by third party subpoena before the close of discovery and cannot now complain of prejudice for failure to do so.

**7. The NFL must produce documents showing any use of films containing Plaintiffs' likenesses used in beta testing for NFL Now, and otherwise used by NFL Now before the close of discovery in this matter; but the NFL need not produce Mr. Katz for continued deposition.**

Plaintiffs contend the NFL erred by instructing their Rule 30(b)(6) designee, Howard Katz, not to answer questions about the use of films containing their likenesses in the platform NFL Now, and Plaintiffs' seek production of relevant documents. The NFL objects to production of such documents because the protective order precludes discovery concerning the NFL's "future uses" of Plaintiffs' likenesses. The NFL submitted that while NFL Now launched soon before the close of damages discovery in this matter, if the request is limited to uses of Plaintiffs' films in beta testing for NFL Now, and uses or access of the films after launch but before the close of discovery, it is likely a very small universe of responsive documents.

To the extent the NFL possesses responsive documents showing access or use of films containing Plaintiffs' likenesses by NFL Now before the close of damages discovery, such information falls within the relevant time period. Thus, the NFL must produce responsive documents, if any, used in beta testing for NFL Now or used after the launch of NFL Now but before the close of damages discovery.

Plaintiff's also challenge the NFL's instruction that Katz not testify in response to the question of whether game footage, which the NFL interpreted as "live games," was an element in negotiating licensing fees for the content of NFL

films.   The NFL objects to such questioning on the basis that information concerning live game revenue is protected from discovery.   The NFL is correct, on April 3, 2014, the Court granted a protective order covering "information about revenues other than the challenged uses of NFL films programs in which Plaintiffs appeared."  (Dkt. 510 at 2).  Therefore, the NFL did not err in instructing Katz not to testify in response to Plaintiffs' question regarding live game footage.

Plaintiffs also challenge the NFL's instruction to Mr. Katz not to answer a question regarding what would happen, with respect to "the NFL's general licensing practice," based on a hypothetical question regarding a player who objected to use of footage containing his likeness.   (Pl's Mem. at 10-11).  Finally, Plaintiffs challenge the NFL's instruction not to answer a question "as to whether or not access to NFL Films footage was a factor in negotiations for licensing agreements the NFL enters into with networks."  (Pls' Mem. at 11).   Plaintiffs contend the information is relevant to two areas of permissible discovery under this Court's prior order:  (1) the NFL's licensing practices related to footage in which Plaintiffs appear; and (2) general information regarding:  (1) the NFL's standard practices and procedures regarding the licensing of NFL films footage and NFL films programs.  (Pl's Mem. at 11 (citing Dkt. 510 at 2)).

The NFL asserts the challenged deposition questions go to liability, for which discovery is closed.   Furthermore, the NFL asserts Plaintiffs had opportunity to explore these issues in Mr. Katz's first deposition in the liability

stage of discovery, and Plaintiffs otherwise exhaustively questioned Mr. Katz regarding the value of the NFL films.

The NFL's instruction not to answer the specific questions at issue did not prejudice Plaintiffs because Katz responded to similar questions in the liability phase of damages discovery, and the deposition transcript from the damages phase of discovery reveals Plaintiffs extensively questioned Mr. Katz regarding the value of the NFL films. Therefore, Plaintiffs' request to compel responses to these questions is denied.

### E. The NFL need not provide further responses to Interrogs. 14, 17 and 20.

On April 3, 2014, the Court ruled that the NFL could produce business records instead of answering certain interrogatories, if done in a manner to allow Plaintiffs to identify the responsive information as readily as the NFL could. (Dkt 510 at 9-10). In response to Interrogatories 14, 17 and 20, the NFL identified its responsive business records by Bates numbers, and it has established that it is no more burdensome for Plaintiffs to find the relevant information within the documents than it would be for the NFL to do so. Therefore, the NFL need not provide further responses to Interrogs. 14, 17 and 20.

## IV.   Conclusion

For the foregoing reasons, Plaintiffs' motion is granted in part and denied in part.

*AJB*