UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John Frederick Dryer,
Elvin Lamont Bethea, and
Edward Alvin White,

      Plaintiffs,

      v.

National Football League,

      Defendant.

Civil File No. 0:09-cv-02182-PAM-AJB

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs John Frederick Dryer, Elvin Lamont Bethea, and Edward Alvin White ("Plaintiffs"), pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, submit the following Reply Memorandum of Law in support of their Motion for Partial Summary Judgment.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

ARGUMENT.......................................................................................................2

I.    The First Amendment does not protect the NFL from liability
for the misappropriation of Plaintiffs' publicity rights.......................2

    A.    Public interest in football does not allow the NFL to
misappropriate Plaintiffs' likenesses with impunity.................3

    B.    The content, form, and context of the films at issue
confirm that they are commercial speech...................................5

        i.    The films are advertisements .............................................6

        ii.   The films refer to a product...............................................7

    B.    The NFL's use of Plaintiffs' identities is not
transformative and therefore not entitled to the First
Amendment protection the NFL seeks.......................................9

II.   Plaintiffs' state law claims are not preempted by the
Copyright Act because Plaintiffs' likenesses are not
copyrightable material and Plaintiffs' cause of action is not
based on the original broadcast of their gameplay............................ 11

III.  Plaintiffs' state law claims are not preempted by the Labor
Management Relations Act................................................................... 15

    A.    There is no collective bargaining agreement to preempt
Plaintiffs' state law claims. ....................................................... 15

    B.    The language the NFL contends requires interpretation
is not a provision of a CBA........................................................ 16

    C.    The court need only reference – not interpret – the CBA
in order to observe that it does not address publicity
rights ............................................................................................ 18

    D.    Plaintiffs' state law claims arise from rights created
outside of the CBAs ................................................................... 19

IV.   The record establishes that Plaintiffs never consented to the
NFL's post-retirement use of their identities...................................... 20

CONCLUSION ............................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allis-Chalmers v. Lueck*,
   471 U.S. 202 (1985) ............................................................................ 17

*Beverley v. Women's Medical Center*,
   78 N.Y.2d 745 (N.Y. Ct. App. 1991)................................................... 8

*Brown v. Holiday Stationstores, Inc.*,
   723 F. Supp. 396 (D. Minn. 1989)...................................... 17, 18, 19

*Brown v. National Football League*,
   219 F. Supp. 2d 372 (S.D.N.Y. 2002) ............................................... 19

*Carpenters Southern California Administrative Corp. v. Majestic Housing*,
   743 F.2d 1341 (9th Cir.1984) ........................................................... 19

*CBC Distrib. & Mktg, Inc. v. Major League Baseball Advanced Media, LP*,
   505 F.3d 818 (8th Cir. 2007) .................................................. 4, 9, 10

*Connick v. Myers*,
   461 U.S. 138 (1983) .............................................................................. 5

*Derrico v. Sheehan Emergency Hosp.*,
   844 F.2d 22 (2d Cir. 1988) ............................................................... 15

*Faber v. Condecor, Inc.*,
   477 A.2d 1289 (N.J. App. Div. 1984) ............................................... 20

*Facenda v. N.F.L. Films, Inc.*,
   542 F.3d 1007 (3d. Cir. 2008) ....................................... 12, 13, 14, 15

*Football League v. National Football League*,
   842 F. 2d 1335 (2d Cir. 1988) ............................................................ 8

*Gionfriddo v. Major League Baseball*,
   94 Cal. App. 4th 400 (Cal. Dist. Ct. App. 2001) ............................... 4

*Green v. Metro/Bi-State Dev. Agency*,
   No. 4:06CV1094-DJS, 2007 U.S. Dist. LEXIS 81257
   (E.D. Mo. Nov. 1, 2007) .................................................................... 21

*Hart v. Electronic Arts, Inc.*,
   717 F.3d 141 (3d Cir. 2013) ................................................................ 9

*Henley v. Dillard Dep't Stores,*
  46 F. Supp. 2d 587 (N.D. Tex. 1999) ............................................................... 20

*In re NCAA Student Athlete Name & Likeness Licensing Litig.,*
  724 F.3d 1268 (9th Cir. 2013) ........................................................................... 9

*Jordan v. Jewel Food Stores, Inc.,*
  743 F.3d 509 (7th Cir. 2014) ............................................................................. 7

*Keller v. Electronic Arts, Inc.,*
  No. 10-15387, 2010 U.S. 9th Cir. Briefs LEXIS 332
  (9th Cir. Nov. 5, 2010) ............................................................................. 10, 11

*Laws v. Sony Music Entm't, Inc.,*
  448 F.3d 1134 (9th Cir. 2006) ......................................................................... 14

*Livadas v. Bradshaw,*
  512 U.S. 107 (1994) ......................................................................................... 18

*Lumber Production Industrial Workers Local No. 1054 v. West Coast Industrial
  Relations Ass'n, Inc.,*
  775 F.2d 1042 (9th Cir.1985) .......................................................................... 15

*Nat'l Basketball Ass'n v. Motorola, Inc.,*
  105 F.3d 841 (2d Cir. 1997) ............................................................................ 11

*Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union,*
  430 U.S. 243 (1972) ......................................................................................... 16

*Oberkramer v. IBEW-NECA Serv. Ctr.,*
  151 F.3d 752 (8th Cir. 1998) ........................................................................... 16

*Office and Professional Employees Insurance Trust Fund v. Laborers Funds
  Administrative Office, Inc.,*
  783 F.2d 919 (9th Cir.1986) ............................................................................ 15

*Porous Media Corp. v. Pall Corp.,*
  186 F.3d 1077 (8th Cir. 1999) .............................................................. 4, 6, 7, 8

*Ray v. ESPN, Inc.,*
  No. 13-1179-CV-W-SOW, 2014 U.S. Dist. LEXIS 85219
  (W.D. Mo. Apr. 8, 2014) ................................................................................. 13

*Somerson v. World Wrestling Entm't, Inc.,*
  956 F. Supp. 2d 1345 (N.D. Ga. 2012).................................................... 13, 14

*Steelworkers v. Rawson,*
  495 U.S. 362 (1990) ......................................................................................... 19

*White v. Samsung,*
   971 F.2d 1395 (9th Cir. 1992) ........................................................................... 20

*Williams v. National Football League,*
   582 F. 3d 863 (8th Cir. 2009) .................................................................... 17, 18

## INTRODUCTION

During oral argument on the NFL's motion for judgment on the pleadings, the league's outside counsel assured this Court that discovery would not change "a wit" the question of whether the programs at issue were entitled to First Amendment protection. Time has proven him right. After years of discovery, the NFL has not mustered a single piece of evidence that suggests that the Court got it wrong when it found that the First Amendment may not shield the league from liability for its use of Plaintiffs' likenesses. To the contrary, as set forth in Plaintiffs' motion, discovery has confirmed that no such protection applies.

Numerous internal documents produced by the NFL spell out in no uncertain terms that the league has recognized for years that these programs are promotional pieces, designed to sell NFL football. Because the undisputed record confirms that the NFL's First Amendment defense must fail, the Court should grant Plaintiffs' motion for summary judgment.

The NFL's claim of preemption under the Copyright Act fares no better. The league does not dispute that Plaintiffs enjoy a protectable interest in their likenesses. Nor can it dispute that Plaintiffs' likeness are not copyrightable material under the Act. Accordingly, the Copyright Act does not apply to the uses at issue in this case and the NFL's claim of preemption thereunder fails.

1

Nor does the Labor Management Relations Act ("LMRA") preempt any of Plaintiffs' claims. The LMRA does not apply to claims that arise outside of a collective bargaining agreement. Because there can be no dispute that the claims at issue in this case arose outside of any collective bargaining agreement, the NFL's LMRA defense fails.

Finally, the NFL has not even attempted to identify any factual or legal leg on which its player-consent defenses can stand. The record is simply bereft of any evidence that any of the Plaintiffs consented to the uses of their likenesses at issue in this case. Accordingly, the Court should grant Plaintiffs' motion for summary judgment.

## ARGUMENT

### I.     The First Amendment does not protect the NFL from liability for the misappropriation of Plaintiffs' publicity rights

In its motion for judgment on the pleadings, the NFL made the very same argument to the Court that it makes now: that because the NFL Films programs relate to a popular sport, they are not commercial speech, and are therefore protected by the First Amendment. The Court rightly expressed skepticism at such a sweeping proposition, (*see* Dkt. 35 at 7), and correctly observed that "[t]he level of First Amendment protection due the [NFL's] private images is not as strong as that due public information." (Dkt. 35 at 8.)

After years of discovery, the NFL has come up with no evidence that would require the Court to reverse these findings. The league does not suggest that discovery has revealed any greater public interest in the subject matter of the films, or that the nature of their content is any less private or commercial than it was in 2010. To the contrary, what the record *has* revealed are a multitude of documents confirming that the NFL itself characterizes NFL Films programs as advertisements for NFL football. (*See, e.g.*, Dkt. 541, Exs. 3 and 4.)

Following discovery and the development of the factual record, the arguments the NFL made over four years ago regarding the allegedly non-commercial nature of the films ring all the more hollow today than they did in 2010.

## A.    Public interest in football does not allow the NFL to misappropriate Plaintiffs' likenesses with impunity

The NFL contends that because the public is interested in football, the league should enjoy blanket First Amendment protection for its unauthorized use of Plaintiffs' likenesses. But that is not the law. As this Court explained in rejecting this argument the first time the NFL raised it, "not all information that 'command[s] a substantial public interest' is 'due substantial constitutional protection.'" (Dkt. 35 at 6 (quoting *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 411 (Cal. Dist. Ct. App. 2001).) Indeed, "'[c]ommunications can constitute commercial speech notwithstanding the fact that they contain

discussions of important public issues.'" (*Id.* (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1120, n.8 (8th Cir. 1999).)

The Court also correctly rejected the NFL's proposed overbroad reading of both *Gionfriddo* and *CBC Distrib. & Mktg, Inc. v. Major League Baseball Advanced Media, LP*, 505 F.3d 818 (8th Cir. 2007), explaining that these cases are not "particularly instructive on the issues presented here." (Dkt. 35 at 8.) The Court explained that *Gionfriddo's* "heavy emphasis on the public's interest in the works at issue calls into doubt the far-reaching holding of that opinion," (Dkt. 35 at 6), and further concluded that "a full reading of *CBC* shows that the key to the Eighth Circuit's decision was that information at issue was already in the public domain." (*Id.* at 7.)

Yet the NFL continues to bet the farm on these two cases. Moreover, the NFL has provided no reason why the Court should change its application of *Gionfriddo* and *CBC* to the facts of this case. The Court has already examined these cases, and determined that *CBC* does not extend First Amendment protection "to anything other than factual, publicly available data." (*Id.* at 8.) And now, the record only demonstrates further the extent to which "the images used in the NFL's video productions are most certainly not publicly available; the NFL protects those images very vigorously." (Dkt. 35 at 8.)  For example,

NFL policies strictly prohibit the dissemination of game footage to anyone, for any purpose. (*See*, *e.g.*, Dkt. 541, Exs. 6 & 14.)

The popularity of football simply does not change the fact that NFL Films are promotional in nature, nor does it alter the Court's previous determination that the NFL's private images do not merit the type of First Amendment protection afforded to publicly available information. (Dkt. 35 at 8.)

### B.     The content, form, and context of the films at issue confirm that they are commercial speech

The NFL continues to urge a narrow test for commercial speech that looks only to whether the speech "proposes[s] a commercial transaction," (*see* Dkt. 35 at 3; Dkt. 549 at 6.) But this Court has already recognized that the appropriate test is far broader. In determining whether speech is "commercial" under the First Amendment, "[a] court must examine the 'content, form, and context' of the speech 'as revealed by the whole record.'" (Dkt. 35 at 8 (citing *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).) As set forth in Plaintiffs' moving papers, the undisputed record concerning the "content, form, and context" of the films at issue leaves no doubt that they are commercial speech. And the NFL's opposition does not provide any basis to conclude otherwise. Indeed, the league does not deny that the programs are promotional pieces that are designed to sell the game of football. Nor does the league point to any evidence that contradicts

the numerous documents showing that the NFL has celebrated for years the role this propaganda has played in promoting NFL football.

Instead, the NFL builds a straw man – claiming that Plaintiffs have proposed a test that merely "look[s] to the effect speech has on its author's reputation or brand" (Dkt. 549 at 8) – which it then attempts to knock down. Plaintiffs have suggested no such test. Unlike the NFL, Plaintiffs simply applied the Court's prior ruling to the evidentiary record, recognizing that the Court will "examine *all aspects of the works* to determine whether those works constitute commercial speech." (Dkt. 35 at 6) (emphasis added). On that undisputed record, there can be no doubt that these films fall squarely within the definition of commercial speech, as set forth by the Eighth Circuit in *Porous Media* and by this Court.

### i.     The films are advertisements

The NFL's contention that NFL Films programs are not advertisements directly contradicts the record, which reveals years of internal and public statements that the league has made to the contrary. (*See, e.g.*, Dkt. 541, Exs. 3 & 4.)  The record makes clear that the films are designed for the very same purpose as traditional advertisements – to sell. Contrary to the NFL's arguments, (*see* Dkt. 549 at 8-12), the inclusion of entertaining or informative content within an

advertisement does not render that advertisement protected speech under the First Amendment.

### ii.     The films refer to a product

Parroting the argument it raised in its motion for judgment on the pleadings, the NFL again claims that the films at issue are not commercial speech because they do not refer to a specific product. The NFL is wrong for at least two reasons. *First*, the NFL proposes an exceedingly narrow reading of the *Porous Media* test that has no basis in law. The *Porous Media* decision does not establish that advertisements for "brands and companies" (Dkt. 549 at 19) are any less commercial in nature than advertisements for "a specific product that viewers can buy," (Dkt. 549 at 17), as the NFL suggests. *See* 173 F.3d at 1121. And cases balancing First Amendment concerns against rights of publicity do not support such an absurd limitation. In *Jordan v. Jewel Food Stores, Inc.*, for instance, a supermarket chain ran a promotional item in Sports Illustrated magazine saluting the accomplishments of Michael Jordan after he was inducted into the Basketball Hall of Fame. 743 F.3d 509, 512 (7th Cir. 2014). The piece referred to no specific product, but rather "prominently include[d] the Jewel-Osco logo and the supermarket chain's marketing slogan[.]" *Id*.  The *Jordan* court, nonetheless, had no trouble concluding that the content was commercial, explaining that "modern commercial advertising is enormously varied in form and style." *Id*. at 518.

Similarly, First Amendment protection was held not to apply where a for-profit medical clinic printed and distributed a calendar chronicling its take on the history of the women's movement.  *Beverley v. Women's Medical Center, Inc.*, 78 N.Y.2d 745, 749-53 (N.Y. Ct. App. 1991). The calendar did not contain any reference to any product, but rather displayed the clinic's "name, logo, address and telephone number . . . at the bottom of each page[.]" *See id.* at 749.

*Second*, discovery has confirmed that the films at issue do, in fact, refer to a specific product – NFL football. (*See*, e.g., Dkt. 541, Ex. 16); *see also Football League v. National Football League*, 842 F. 2d 1335, 1340 (2d Cir. 1988) ("The older of the two leagues, the National Football League, is a highly successful entertainment product."). The NFL has repeatedly acknowledged that it *sold the game of NFL football* using NFL Films. (*E.g.*, Dkt. 541, Ex. 9.) It cannot now credibly contend that the films do not promote that product. There is no doubt that the product being featured in these programs is NFL football; and that the NFL intends for viewers of the films to associate with NFL football the positive feelings the films convey.

Because the record concerning the "content, form, and context" of the films at issue conclusively demonstrates that they meet all of the elements set forth in *Porous Media*, the Court should find that they are "commercial speech" for purposes of First Amendment analysis. As such, any First Amendment

protection to which the films are entitled is far outweighed by the Plaintiffs'

substantial interests in their publicity rights. The Court should therefore enter

summary judgment in Plaintiffs' favor on the NFL's First Amendment defense.

**B.**  **The NFL's use of Plaintiffs' identities is not transformative and therefore not entitled to the First Amendment protection the NFL seeks**

As both the Third and Ninth Circuits have recently recognized, in

decisions that post-date both *CBC* and the NFL's motion for judgment on the

pleadings, the transformative use test offers a workable way to balance First

Amendment concerns against right of publicity claims where an unauthorized

use of a likeness is made in the context of an allegedly creative work. *See Hart v.*

*Electronic Arts, Inc.*, 717 F.3d 141, 148-60 (3d Cir. 2013) (explaining that the

likeness itself must be transformed, in order to protect against "blatant

misappropriation" within a purportedly expressive work); *In re NCAA Student*

*Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1271-73, 1274-79 (9th Cir.

2013) (explaining that literal recreations of athletes in the very setting in which

they achieved renown did not constitute a transformative use of their likenesses).

As explained in Plaintiffs' response brief, the transformative use test offers

a clear way of determining whether the NFL's use is, in fact, inseparable from

expression. (*See* Dkt. 551 at 26-28.) Under this test, because the NFL's use of

Plaintiffs' likenesses themselves is literal and does not transform the likenesses

themselves, Plaintiffs' rights to control the use of their identities outweigh any First Amendment protection afforded to the NFL's use. (*See id.*)

The NFL itself advocated this very idea before the Ninth Circuit when it sought to assert its *current* players' rights of publicity against the makers of professional-football themed video games. In an amicus brief the NFL submitted in the appeal of *Keller v. Electronic Arts, Inc.*, No. 10-15387, 2010 U.S. 9th Cir. Briefs LEXIS 332, at *4 (9th Cir. Nov. 5, 2010), the NFL argued that the video game maker was "not entitled to either a First Amendment defense or the public-affairs exception . . . [because it] could not reasonably contend that it has transformed the athletes' identities[.]"

The NFL insinuates that the Eighth Circuit has already rejected the transformative use test in the *CBC* case. Such reasoning is a bridge too far. As this Court has explained, the *CBC* decision turned upon that court's finding that the defendant had attempted to privatize factual, publicly available data. (Dkt. 35 at 7-8.) Thus, the *CBC* court had little need to examine the "expressive" nature of the use of that already-protected data. Here, the source content for NFL Films is private in nature, and the NFL claims that its use of Plaintiffs' identities is "inextricably intertwined" with pure expressive speech. (Dkt. 544 at 32-33.) The NFL offers no explanation for why the transformative use test should apply

when it would benefit the NFL's interests – as in *Keller* – but should not apply

when it would impede the league's interests.

## II.   Plaintiffs' state law claims are not preempted by the Copyright Act because Plaintiffs' likenesses are not copyrightable material and Plaintiffs' cause of action is not based on the original broadcast of their gameplay.

In its January 28, 2010 Order, the Court held that "the 'work' at issue (*i.e.*,

Plaintiffs' personas) is not within the subject matter of copyright," and

accordingly did not satisfy the first prong of the preemption analysis. (Dkt. 35 at

14.) It further ruled that the right of publicity was not "equivalent to any of the

exclusive rights in the Copyright Act." (*Id.*) The NFL has come forward with no

evidence that would suggest that either of those rulings is any less true today

than it was in 2010. Indeed, the NFL's Opposition memorandum cites nothing to

the contrary, and merely argues that, under the second prong, because Plaintiffs

claim rights in images of themselves playing football, the rights are equivalent

and preemption is established. (Dkt. 549 at 25-26.) Indeed, the league's attempt to

rescue its defense ignores the dispositive distinction courts have drawn between

the original copyrightable broadcast and the rights to subsequent use of an

individual's image in a different program. While the former is subject to the

Copyright Act, the latter is not. *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d

841, 847 (2d Cir. 1997) ("it is the *broadcast, not the underlying game*, that is the

subject of copyright protection.") (emphasis added); (*see also* Dkt. 35 at 14) ("A

11

persona can hardly be said to constitute a 'writing' of an 'author' within the meaning of the Copyright Clause of the Constitution. Thus the work at issue is not within the subject matter of copyright.".) Accordingly, because failure to satisfy either prong is dispositive of the Court's inquiry, the NFL's preemption defense must fail.

As to the Second prong of the analysis, Plaintiffs' claims are based on the NFL's subsequent misappropriation of their images in the films at issue – not the original broadcast of the games in which they played. The mere fact that their non-copyrightable likenesses are recorded does not render them the copyrightable material. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1027 (3d. Cir. 2008) (While Facenda's voice could be "fixed" in a tangible medium through recording, his identity and persona remained outside the subject matter of copyright). Plaintiffs' right of publicity claims relate to the NFL's unauthorized use of Plaintiffs' likenesses in NFL programming different from the original game broadcasts.

The Third Circuit spoke on exactly this issue in *Facenda* – highlighting the important distinction between a copyrightable work and an individual's underlying publicity right in his image or persona. The plaintiff in *Facenda* sought to enforce his publicity rights in recordings of his football commentary during football films when the NFL used those recordings from football game

broadcasts later in new content. *Id.* at 1031. The Third Circuit held that, while the plaintiff "consented to participation in films documenting NFL games," he did not consent to the use of those same sound recordings for use in other content, and accordingly preemption was not appropriate. *Id.* The same scenario is present here. Just as in *Facenda*, here the NFL appropriated Plaintiffs' likenesses from their original broadcasts and used them to create new content without the Plaintiffs' consent.

Both *Ray* and *Somerson* are inapposite because, in each case, the plaintiff sought publicity rights in the original broadcast of his wrestling performance. *Ray v. ESPN, Inc.*, No. 13-1179-CV-W-SOW, 2014 U.S. Dist. LEXIS 85219, at *1-3 (W.D. Mo. Apr. 8, 2014) (finding the cause of action related to "ESPN telecasting previously recorded wrestling matches in which plaintiff participated."); *Somerson v. World Wrestling Entm't, Inc.*, 956 F. Supp. 2d 1345, 1348, 1355 (N.D. Ga. 2012) (the unlawful "use" was the distribution of the copyrightable works and the plaintiff only argued that the defendant had no proof it owned the copyrights). Plaintiffs make no such claim in this case.  Moreover, the NFL's reliance upon *Somerson* is further misplaced and should factor in the Court's decision. Although *Somerson* found the use of the plaintiff's image in the athletic event was non-copyrightable, it nonetheless found preemption appropriate under the second prong of the analysis. 956 F. Supp. 2d at 1354-55 (finding that

the athletic event featuring the plaintiff not copyrightable, yet concluding there was "no extra element" under George publicity law because the plaintiff claimed an interest in the release and distribution of his wrestling recordings). Because the court should have ended the inquiry once it determined the underlying material was not subject to copyright, the court's decision was incorrect. *See Facenda*, 542 F.3d at 1027 (noting the two-prong analysis, and finding neither satisfied). The court in *Somerson* was additionally hampered by the fact that the plaintiff never contested the preemptive effect of the defendant's use, but merely argued that the defendant could not prove it owned the copyrights at issue. 956 F. Supp. 2d at 1355.

Furthermore, the decision in *Laws*, contrary to the NFL's argument, did not turn upon whether the song at issue was "performed as a song." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1141-42 (9th Cir. 2006). Rather, Laws is distinguishable because the underlying material at issue was a copyrightable performance of a song. *Id.* (finding that the action challenged control of Laws' copyrightable singing performance within another copyrightable work by Lopez, not the plaintiff's image, name or voice). In *Laws*, the plaintiff sued Sony for misappropriation of her name and voice when Sony sampled her previously-recorded performance of a song in a Jennifer Lopez recording. *Id.* at 1136.  The Ninth Circuit found that the subject matter of Laws right of publicity claim was

not that her voice was recognizable, but for using her copyrightable recorded

vocal performance. *Id.* at 1141. Accordingly, there was no separate non-

copyrightable material in which Laws could claim an interest. *Id.* Here, the

Plaintiffs' likenesses, like the recording of the announcer in *Facenda*, are not

subject to copyright. Because the Plaintiffs' rights in their likenesses are not the

subject matter of copyright, and because Plaintiffs' publicity claims do not

overlap with the protections afforded by the Copyright Act, the NFL's Second

Affirmative Defense of copyright infringement must fail.

### III.   Plaintiffs' state law claims are not preempted by the Labor Management Relations Act

#### A.   There is no collective bargaining agreement to preempt  Plaintiffs' state law claims.

The NFL's contention that the Labor Management Relations Act ("LMRA")

preempts Plaintiffs' state law claims fails as a matter of law because the claims do

not arise under an existing collective bargaining agreement ("CBA").  Courts

agree that, as the Second Circuit put it, "section 301 [of the LMRA] has no

application in the absence of a currently effective CBA. . . . after expiration of the

CBA there is no contract subject to section 301 and there can be neither removal

jurisdiction nor preemption under section 301." *Derrico v. Sheehan Emergency*

*Hosp.*, 844 F.2d 22, 25-27 (2d Cir. 1988); *see also Office & Prof. Employees Ins. Trust*

*Fund v. Laborers Funds Admin. Office, Inc.*, 783 F.2d 919, 921-22 (9th Cir.1986)

(finding no LMRA preemption for a claim based on "the expired CBA"); *Lumber Prod. Indus. Workers Local No. 1054 v. West Coast Industrial Relations Ass'n, Inc.*, 775 F.2d 1042, 1046 (9th Cir.1985) ("[A]n expired agreement cannot serve as the basis for a proper exercise of jurisdiction under section 301(a).").

It is undisputed that the uses of Plaintiffs' images and likenesses at issue here occurred after each Plaintiff retired from professional football—and well after any prior CBA had expired. It is also undisputed that there is no CBA currently in force for Plaintiffs' claims. Plaintiffs' claims are not within the ambit of the LMRA, and cannot be preempted under established case law.

The cases upon which the NFL relies in its opposition do not change this outcome, and are, indeed, factually inapposite. Those cases either do not address the issue of an expired CBA, *see Oberkramer v. IBEW-NECA Serv. Ctr., Inc.*, 151 F.3d 752, 754 (8th Cir. 1998) (no allegation that the CBA in place had expired), or they concern rights created by the CBA itself. *See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union,* 430 U.S. 243, 249 (1977) (dispute over severance pay concerned a right created by the CBA).

Because the Plaintiffs were no longer parties to any CBA at the time that their independent state law claims arose, the NFL's LMRA defense fails for this reason alone.

**B.      The language the NFL contends requires interpretation is not a provision of a CBA.**

The NFL cannot trigger LMRA preemption by erroneously characterizing language from its player contracts or its bylaws as a provision of a CBA.  The clause which the NFL argues grants it "the privilege and authority to use [the player's] name and/or picture for publicity and/or advertising purposes in . . . motion pictures" (Dkt. 549 at 29-30) *does not come from a CBA*, but rather from two separate and distinct documents: the NFL's Constitution and Bylaws (pre-1976) and the Plaintiffs' previous player contracts (post-1976). (*See* Dkt. 544 at 57-58.)

Preemption under the LMRA is proper only where the resolution of the plaintiff's claims is "inextricably intertwined" with *the interpretation of a CBA.* *Brown v. Holiday Stationstores, Inc.*, 723 F. Supp. 396, 407 (D. Minn. 1989). Because the language at issue here does not come from any clause within the CBA, there is no need for the CBA to be "interpreted," and thus no basis for the LMRA to preempt the Plaintiffs' claims. *See Williams v. Nat'l Football League*, 582 F.3d 863, 876-77 (8th Cir. 2009) (determining that the NFL's standard player contracts "are actually separate documents from the CBA such that there is no need to reference the form contract contained in Appendix C of the CBA to examine them."); *see also Allis-Chalmers v. Lueck*, 471 U.S. 202, 211 (1985) (explaining that LMRA preemption is not triggered by "every dispute . . . tangentially involving a provision of a [CBA].").

Here, as in *Williams*, "[t]he NFL does not point to a specific provision *of []*
*the CBA* . . . which must be interpreted" in order to resolve Plaintiffs' state law
claims. 582 F. 3d at 876-77 (emphasis added). To the extent it is necessary to
resolve Plaintiffs' claims, judicial reference to the player contracts and/or the
Constitution and Bylaws is not "inextricably intertwined" with the interpretation
of any CBA provision. *See id*. Thus, the Court is free to examine the language of
these documents without triggering LMRA preemption.

### C. The court need only reference – not interpret – the CBA in order to observe that it does not address publicity rights.

Even if the Court were to refer to the expired CBAs themselves—which it
need not—courts recognize an important distinction between *reference* to a CBA
and *interpretation* of a CBA. Mere consultation to a CBA "is insufficient to
warrant preemption of an otherwise independent state law claim." *Williams*, 723
F. 3d at 876-77 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124-25 (1994)). A mere
reading, without interpretation, of the CBAs here reveals that there is nothing
within the CBAs themselves that could possibly supersede Plaintiffs' state law
right of publicity claims. *See Brown*, 723 F. Supp. at 407 (determining that, by
mere reference to the CBA, LMRA preemption was improper where the
plaintiff's claim sought redress for discrimination on the basis of handicap, and
the CBA in question "contained no provision protecting the rights of
handicapped workers"). (*Compare*, *e.g.*, Dkt. 550, Ex. S.)

### D.   Plaintiffs' state law claims arise from rights created outside of the CBAs

Finally, even if interpretation of a CBA *were* required to resolve Plaintiffs' state law claims—which, again, it is not—such claims would still not be preempted because they have a "genesis in state law." *Brown*, 723 F. Supp. at 405 ("[C]laims having their genesis in state law are not preempted merely because their resolution in part requires interpretation of a collective bargaining agreement."); *see also Carpenters S. Cal. Admin. Corp. v. Majestic Housing*, 743 F.2d 1341, 1345 (9th Cir.1984) (emphasizing that the rights of the parties to an LMRA section 301 action must be a product of the bargaining agreement itself, and not of some other origin).

As the NFL acknowledged in its motion to dismiss the concussion litigation, claims arise outside of a CBA where they impose duties on the NFL "to 'every person in society.'" (Gleason Decl., Ex. 27 at 31-32, quoting *Steelworkers v. Rawson*, 495 U.S. 362, 371 (1990)); *see also, e.g., Brown v. Nat'l Football League*, 219 F. Supp. 2d 372, 380 (S.D.N.Y. 2002) ("To be independent of the CBA, a tort claim must allege a violation of a duty 'owed to every person in society' as opposed to a duty owed only to employees covered by the collective bargaining agreement") (quoting *Rawson*, 495 U.S. at 362)).  Plaintiffs' claims are based upon rights under state laws that impose duties upon all of society not to misappropriate the identities of other individuals. *See, e.g., Faber v. Condecor, Inc.*, 477 A.2d 1289 (N.J.

19

App. Div. 1984); *Henley v. Dillard Dep't Stores*, 46 F. Supp. 2d 587 (N.D. Tex. 1999);

*White v. Samsung Electronics Am., Inc.*, 971 F.2d 1395, 1397 (9th Cir. 1992). Because

Plaintiffs' claims originate from rights created by state law, they are beyond the

reach of LMRA preemption.

## IV. The record establishes that Plaintiffs never consented to the NFL's post-retirement use of their identities.

The NFL offers no evidence in opposition to Plaintiffs' argument that

summary judgment is proper with respect to the NFL's Fifth Affirmative

Defense, regarding the "doctrine of consent," and Seventh Affirmative Defense,

regarding the effect of the expired player-contracts upon Plaintiffs' suit. This

should come as no surprise, where the Court has already found that "the written

player contracts contained no provision for post-expiration publicity rights."

(Dkt. 247 at 5-6.)

Instead, the NFL acknowledges that its player-consent defenses depend on

the Court's finding with respect to the league's LMRA preemption defense.

Because the LMRA defense fails as a matter of law, so too must the player-

consent defenses.[1]

---

[1] The NFL suggests that Plaintiffs waived their right to summary judgment on an "implied consent" defense. But the NFL did not assert such a defense in its Answer, raising it for the first time in summary judgment briefing. Plaintiffs' are entitled to summary judgment on this defense as well.

The NFL's failure to raise any evidence or persuasive authority to rebut Plaintiffs' motion renders summary judgment particularly appropriate. *See Green v. Metro/Bi-State Dev. Agency,* No. 4:06CV1094-DJS, 2007 U.S. Dist. LEXIS 81257, at *3-4 (E.D. Mo. Nov. 1, 2007) (finding that a non-movant must submit evidence containing specific facts in order to withstand a summary judgment motion, and "general statements will not be supplemented by a court's assumptions").

Because there are no contracts governing the use of the Plaintiffs' publicity rights, the NFL's consent and contract defenses must fail. Accordingly, summary judgment should be granted with respect to the NFL's Fifth and Seventh Affirmative Defenses.

## CONCLUSION

Because the NFL Films programs at issue in the case constitute private, commercial speech that does not transform the Plaintiffs' likenesses, the First Amendment does not permit the league's violations of Plaintiff's publicity rights. Because Plaintiffs' likenesses are not copyrightable and the NFL's uses of Plaintiffs' likenesses in NFL Films are for a promotional purpose separate from the original purpose of the footage which captured those likenesses, the claims at issue are not preempted by the Copyright Act.

Plaintiffs' rights of publicity originate in state law, outside of a CBA, and no interpretation of a CBA provision is necessary in order to determine the

validity of Plaintiffs' state law claims. The LMRA, therefore, does not preempt Plaintiffs' state law claims. In addition, the NFL has not proven the existence of a material disputed fact concerning whether Plaintiffs consented to the NFL's use of their identities post-retirement. Accordingly, Plaintiffs respectfully request that their motion for partial summary judgment be grant in its entirety and that the Court award such other relief as the Court deems appropriate.

**Robins, Kaplan, Miller & Ciresi L.L.P.**

Date: September 19, 2014          /s/   Jeffery S. Gleason
                                  Michael V. Ciresi (MN Bar No. 16949)
                                  Jan M. Conlin (MN Bar No. 192697)
                                  Thomas C. Mahlum (MN Bar No. 259391)
                                  Aaron R. Fahrenkrog (MN Bar No. 386673)
                                  Jeffery S. Gleason (MN Bar No. 0396190)
                                  2800 LaSalle Plaza
                                  800 LaSalle Avenue
                                  Minneapolis, MN 55402-2015
                                  Phone: (612) 349-8500
                                  Fax: (612) 339-8141
                                  MVCiresi@rkmc.com
                                  JMConlin@rkmc.com
                                  TCMahlum@rkmc.com
                                  ARFahrenkrog@rkmc.com
                                  JSGleason@rkmc.com

                                  Robert A. Stein (MN Bar No. 104930)
                                  **Bob Stein LLC**
                                  10125 Crosstown Circle, #200
                                  Eden Prairie, MN 55344
                                  Phone: (952) 829-1043
                                  Fax: (952) 829-1040
                                  rastein66@aol.com

                                  Thomas J. Ward (*pro hac vice*)
                                  **Ward & Ward, P.L.L.C.**
                                  2020 N Street, N.W.
                                  Washington, D.C. 20036
                                  Telephone: (202) 331-8160
                                  Fax: (202) 503-1455
                                  tom@wardlawdc.com

                                  **Attorneys for Plaintiffs**
                                  **John Frederick Dryer,**
                                  **Elvin Lamont Bethea, and**
                                  **Edward Alvin White**

23

## CERTIFICATE OF COMPLIANCE

I, Jeffery S. Gleason, certify that the Reply Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment complies with Local Rule 7.1(f).

I further certify that, in preparation of this memorandum, I used Microsoft ® Office Word Version 2010, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count.

I further certify that the above referenced memorandum contains 5098 words.

**Robins, Kaplan, Miller & Ciresi L.L.P.**

Date: September 19, 2014 　　　/s/　Jeffery S. Gleason
　　　　　　　　　　　　　　Michael V. Ciresi (MN Bar No. 16949)
　　　　　　　　　　　　　　Jan M. Conlin (MN Bar No. 192697)
　　　　　　　　　　　　　　Thomas C. Mahlum (MN Bar No. 259391)
　　　　　　　　　　　　　　Aaron R. Fahrenkrog (MN Bar No. 386673)
　　　　　　　　　　　　　　Jeffery S. Gleason (MN Bar No. 0396190)
　　　　　　　　　　　　　　2800 LaSalle Plaza
　　　　　　　　　　　　　　800 LaSalle Avenue
　　　　　　　　　　　　　　Minneapolis, MN 55402-2015
　　　　　　　　　　　　　　Phone: (612) 349-8500
　　　　　　　　　　　　　　Fax: (612) 339-8141
　　　　　　　　　　　　　　MVCiresi@rkmc.com
　　　　　　　　　　　　　　JMConlin@rkmc.com
　　　　　　　　　　　　　　TCMahlum@rkmc.com
　　　　　　　　　　　　　　ARFahrenkrog@rkmc.com
　　　　　　　　　　　　　　JSGleason@rkmc.com

　　　　　　　　　　　　　　Robert A. Stein (MN Bar No. 104930)
　　　　　　　　　　　　　　**Bob Stein LLC**
　　　　　　　　　　　　　　10125 Crosstown Circle, #200
　　　　　　　　　　　　　　Eden Prairie, MN 55344
　　　　　　　　　　　　　　Phone: (952) 829-1043

24

Fax: (952) 829-1040
rastein66@aol.com

Thomas J. Ward (*pro hac vice*)
**Ward & Ward, P.L.L.C.**
2020 N Street, N.W.
Washington, D.C. 20036
Telephone: (202) 331-8160
Fax: (202) 503-1455
tom@wardlawdc.com

**Attorneys for Plaintiffs
John Frederick Dryer,
Elvin Lamont Bethea, and
Edward Alvin White**

85103934.3